## HESSE vs. MANN and others, imp.

DOCKETING JUDGMENT:  *When the judgment becomes a lien.   When constructive notice.*

1. Where provisions of statute which require the clerk of the court, at the time of filing judgment rolls, to docket the judgments alphabetically, are substantially complied with (so as to furnish persons interested with convenient means of ascertaining, from the book of docket entries, existing liens by judgment, their date and amount), immaterial inaccuracies of the clerk in making such entries will not defeat the lien of the judgment. *Sexton v. Rhames*, 13 Wis., 99; *Lathrop v. Snyder*, 17 id., 110.

2. Where, on the filing of a judgment roll, the clerk inadvertently docketed the judgment in a book which had been disused for some time, so that the entry preceded several judgments previously docketed in the book then in actual use, the entries being otherwise correctly made: *Held*, that the judgment became a lien on the debtor's land.

3. A valid register of a deed or docket entry of a judgment operates as constructive notice of every fact of which it would furnish actual notice to one duly examining the record.

4. As to one who, after the judgment was docketed as described, took a mortgage of the debtor's land *without actual notice* of the judgment, such docket entry was *constructive notice;* the same being made among judgments docketed within *ten years* before such mortgage, and being sufficient to give him actual notice upon proper search.

5. The fact that the mortgagee relied upon an abstract of title, in which the judgment did not appear, and that the failure to insert it therein may have arisen in part from its being docketed in the manner described, cannot destroy the effect of the record as constructive notice.

6. The effect of a total failure of the clerk to docket a judgment, or of his making the proper entries among judgments docketed ten years before, not decided.

APPEAL from the Circuit Court for *Milwaukee* County.

Foreclosure of a mortgage executed by one Kaehler in August, and recorded in September, 1873. *Mann and others*, impleaded with Kaehler, claimed interests in the mortgaged lands under a judgment in favor of one Scheunert against Kaehler, rendered in the county court of Milwaukee county, December 1, 1870. The issue raised by the pleadings was, whether Scheunert's judgment was docketed, so as to create a lien upon the lands in question, paramount to that of plaintiff's mortgage. The complaint alleges that it was not duly docketed until November 3, 1873, and that plaintiff had no knowledge or notice of it at the time of the execution, delivery or recording of his mortgage; while the answer denies these averments and insists that the judgment was duly docketed on the day of its rendition.

The court found as facts, *inter alia*, 2. That when the Scheunert judgment against Kaehler was entered, there were three alphabetical dockets in the county court of said county, such as are required to be kept by §§ 44, 45, ch. 132, Tay. Stats., numbered respectively, A, B and C, *which had never been contemporaneously used for the docketing of judgments, but successively in the order of the numbering; that the entries in docket B run up to September 6, 1869; and that subsequent to that date judgments in said court were docketed in docket C, without other exception than the one stated in the next finding.* 3. That said Scheunert judgment appears to have been the last one entered in docket B, under the letter K, on the 1st of December, 1870, said entry purporting to be

a docketing thereof on that day; whereas, if entered in the regular order of succession, said judgment would have been the seventh docketed under the letter K in docket C. 4. That said entry of the judgment in docket B was in fact made on said 1st of December; and that the entry was made there instead of in docket C, "by mistake of the clerk of court, or for other reasons unknown." 5. That it has been the uniform practice of the clerks of the circuit and county courts of Milwaukee county, since the organization of that county, to docket judgments of those courts in these alphabetical dockets in the order of their docketing, so that the succession of place follows strictly the order of time, except in the present instance; and that abstracters of titles, and others searching for judgment liens, have relied and acted upon such uniform practice. 6. That the plaintiff had no knowledge or notice in fact of said judgment, until since January, 1876; that in taking the mortgage in suit he relied upon an abstract of title of the mortgaged premises; and that said judgment did not appear upon such abstract, because the person who brought down said abstract from March 14, 1870, to May 9, 1872, failed to find the docket entry of said judgment in docket B, for the reason that, relying upon the uniform practice above stated, he did not look into docket B in his search for judgment liens for the period above named.

On these facts, the court held that the lien of said judgment was subsequent and subordinate to that of the mortgage; and it rendered judgment in plaintiff's favor in accordance with this decision. The defendants interested under the Scheunert judgment excepted to the fifth and sixth findings of fact, and to that part of the second which is printed above *in italics;* and they appealed from the judgment.

The brief for the appellants is signed by *Cotzhausen, Smith, Sylvester & Scheiber;* and the cause was argued orally by *Mr. Cotzhausen.*

Counsel for the appellants referred to secs. 33–39, ch. 132,

R. S., and §§ 1, 2, p. 1546, Tay. Stats., as containing the law as to the manner and effect of docketing judgments in this state; and they argued, 1. That although it may have been a secondary object of the statute to furnish facilities for investigating incumbrances by judgment (*Hunter v. Windsor*, 24 Vt., 327; *Curtis v. Lyman*, id., 338), yet its principal object was simply to fix a point from which, for ten years, the judgment should be a lien on the debtor's lands in any county where it was docketed (*Holmes v. McIndoe*, 20 Wis., 670); that a judgment is not a lien at all until docketed, unless the land has been seized on execution (*Blossom v. Barry*, 1 Lans., 192; *Corey v. Cornelius*, 1 Barb. Ch., 571; Hermann on Ex., 293); that the statute contains no suggestion about the docket entry being constructive notice; but that it makes the judgment, when docketed, an absolute lien upon the lands as against all subsequent purchasers or incumbrancers, entirely independent of all questions as to either actual or constructive notice. 2 R. S. of N. Y., 360; 3 Barb. Ch., 194; 2 Petersd. Abr., 658, and cases in note. 2. That the statute was fully complied with in docketing the judgment here in question, by the entry in docket B, and, in the absence of any fraud, it became a lien from the date of such entry. 3. To the general doctrine that a mistake which is not substantial in the docketing of a judgment will not prevent the lien thereof from attaching, counsel cited *Sears v. Mack's Assignees*, 2 Brad., 394–412; *Appleby v. Barry*, 2 Rob., 689; *Blossom v. Barry*, 1 Lans., 192; *Sears v. Burnham*, 17 N. Y., 448; *Hunt v. Grant*, 19 Wend., 90; *McIndoe v. Hazelton*, 19 Wis., 567; *Holmes v. McIndoe*, 20 id., 657. 4. If the question of constructive notice enters into the case, counsel contended that the entry here was sufficient to constitute such notice, since it was sufficient to have given actual notice to the plaintiff, if he had properly consulted the whole record for judgments docketed within ten years before his purchase; and that plaintiff relied upon an abstract of the title at his own peril. *Clemens v. Elder*, 9 Iowa, 272;

*Ruggles v. Williams*, 1 Head (Tenn.), 141. See also Curwen on Abstracts, 97, and note to *Fuller v. Hubbard*, 6 Cow., 19, 20. The case of *N. Y. Life Ins. Co. v. White*, 17 N. Y., 469, relied on by plaintiff's counsel, turned upon the peculiar terms of the statute, which the court held not to have been complied with. 5. If the entry here was in compliance with the statute, no previous uniform usage of clerks or abstracters can affect the defendant's rights. *Walker v. Transp. Co.*, 3 Wall., 150; *Winter v. U. S.*, Hempst., 344; 2 Greenl. Ev., and Bouvier's Law Dic., title "Custom;" *Dickinson v. Gay*, 7 Allen, 29; *Dodd v. Farlow*, 11 id., 426; *Boardman v. Spooner*, 13 id., 353; *Reed v. Richardson*, 98 Mass., 216; *Odiorne v. N. E. Ins. Co.*, 101 id., 557; *Snelling v. Hall*, 107 id., 134; 1 Greenl. Ev., § 294; 3 Kent (12th ed.), 260 and note. In no case is one bound by a local usage, or the usage of a particular trade or profession, unless it appears that he had *knowledge* of it. *Walls v. Baily*, 49 N. Y., 473; *Clayton v. Gregson*, 5 Ad. & El., 302; *Bodfish v. Fox*, 23 Me., 90; *Esterly v. Cole*, 3 Coms., 502; *Higgins v Moore*, 34 N. Y., 417.

*J. F. McMullen*, for the respondent, contended that the Scheunert judgment was not docketed until November 3, 1873, in such a manner as to make it a lien upon the land as against a mortgage to secure moneys loaned without knowledge or suspicion of the existence of such judgment, especially where it was shown, as here, that the mortgagee was in fact misled by the departure from established and uniform usage in the first attempt to docket such judgment. The first entry in docket C of judgments, under the letter K, was under date December 6, 1869. Suppose that the entry of November 3, 1873, had not been made, and that on the 1st of January, 1880, one should examine the record for judgment liens upon Kaehler's lands, accruing within the period of ten years, to which such liens are limited. Looking through docket C, he would find that it extended back during a period more than ten years previous to the day of search. Trusting to the uniform and

proper practice of entering judgments successively on the docket in the order of time, he looks no farther; and the land is immediately purchased and the price thereof paid, upon the faith of this examination of the records, and without suspicion of the Scheunert judgment. On the appellants' theory, the lien of that judgment would still be good as against the purchaser. Can this be a sound theory? Against this view counsel contended, (1) That the mere fact that a conveyance is in the record, or a judgment on the docket, is not sufficient to charge a purchaser with notice. It must be *so* recorded that a diligent examiner, relying upon the provisions of law and uniform practice, would find it when searching *for it particularly*. It is not sufficient that he might have found it when searching for *other* conveyances or judgments, or upon a general search through the records. (2) That the *practical construction*, during a long period, of the statute relating to the docketing of judgments is, that they must be entered successively on the docket in the order of time, and that this practical construction has the force of law. (3) That the effect upon the rights of the judgment creditor, of a failure to make a proper and sufficient entry of the judgment upon the docket, will not be altered by the fact that it occurs through the fault of the clerk. In support of these views counsel cited *Ely v. Wilcox*, 20 Wis., 524; *King v. Young Men's Association*, 1 Wood (U. S. C. C.), 387; *Buchan v. Sumner*, 2 Barb. Ch., 165; *Wheeler v. Scott*, 3 Wis., 362; *Koning v. Bayard*, 2 Paine C. C., 251; 3 Bulstrode, 53; *Wood v. Hurd*, 3 Bing. N. C., 45; *Ridgway, Budd & Co.'s Appeal*, 15 Pa. St., 177; *Smith's Appeal*, 47 id., 128; *Frost v. Beekman*, 1 Johns. Ch., 288; *Pringle v. Dunn*, 37 Wis., 449, 461; *Sawyer v. Adams*, 8 Vt., 172; *N. Y. Life Ins. Co. v. White*, 17 N. Y., 469; *Jennings v. Wood*, 20 Ohio, 261, 267; *Harrington v. Smith*, 28 Wis., 43; *Dean v. Borchsenius*, 30 id., 237; *Miller v. Bradford*, 12 Iowa, 14, 18; *Hunt v. Grant*, 19 Wend., 90; *Blossom v. Barry*, 1 Lans., 190; *Shepherd v. Burkhalter*, 13

Ga., 443; *Wood v. Reynolds*, 7 Watts & S., 406; Freeman on Judgments, 202. Counsel also contended that the cardinal object of the statute relative to the docketing of judgments is, to give *notice* to subsequent purchasers. To this point he cited various provisions of the statute itself, and several of the cases above named, with the following: *Barron v. Purchas*, 5 L. J., N. S. (1836), King's Bench, 148; *Hopwood v. Watts*, 3 id. (1834), K. B., 109; *Braithwaite v. Watts*, 2 Crompt. & J., 318, 322, 324; *Sears v. Burnham*, 17 N. Y., 448.

RYAN, C. J. The argument in this case was learned and able on both sides, taking a range much wider than our view of the question will require us to follow.

The statute requires clerks of courts of record, at the time of filing judgment rolls, to docket the judgment alphabetically. Except as it may be implied from this provision, there is nothing in the statute requiring the clerk to docket judgments in the order in which he receives the judgment rolls. R. S., ch. 132, secs. 36, 37.

The object of the alphabetical docket, in relation to the lien of judgments, is to furnish persons interested with convenient means of ascertaining existing liens by judgment, their date and amount. So that the book of docket entries complies substantially with the provisions of the statute to this end, immaterial inaccuracies of the clerk in making the entries will not defeat the lien of a judgment. *Sexton v. Rhames*, 13 Wis., 99; *Lathrop v. Snyder*, 17 id., 110.

The present case must turn on the original docket entries of the judgment under which the appellants claim. The redocketing of the judgment by the clerk, when he discovered the mistake in the place of entry, was wholly unauthorized. It was not an attempt to correct the mistake of place of the original entry, but to docket the judgment anew, in a place where it was as much out of order as the original entry; assuming to change the date of apparent lien of the judgment without color of authority

No objection is made to the docket entries themselves of the judgment in question, made by the clerk at the time of filing the judgment roll; the only objection being that the entries are in the wrong book, and thereby out of order of date. By some inadvertence, the clerk docketed the judgment in a book which had been disused for some time, so that the entry preceded several judgments previously docketed in the book then in actual use. The entries appear to be in strict compliance with the statute, except so far as it may imply that the entries should be made in the order of their date.

We cannot agree with the counsel of the respondent that the plaintiff recovering the judgment, or his attorney, is responsible for the inadvertence of the clerk. The statute imposes the duty upon the clerk, *ex officio*, without direction or control of the party or attorney; the attorney may well presume that the clerk will perform his duty; and it would be extreme caution in the attorney to oversee the clerk in all the *minutiæ* of his positive ministerial duty.

What the effect would be, in such a case as this, of a total failure of the clerk to docket a judgment, or of his making the proper entries amongst judgments docketed ten years before, or under a wrong letter, so that it would not appear upon search (ch. 132, sec. 38, R. S.), amongst judgments docketed against the judgment debtor within ten years, are questions not arising in this case, and on which we need express no opinion.

But it is very certain that the docketing of a judgment in strict compliance with the letter of the statute, out of the order of date, and so far failing at most in an orderly and convenient compliance with its letter, is not void. It is surely good as against the judgment debtor.

The report of *Sexton v. Rhames, supra*, is defective. That case was under the revised statutes of 1849. Sec. 16 of ch. 102 of that revision is precisely to the same effect as sec. 37 of ch. 132 of the present revised statutes. And ch. 102 of

1849, amended by ch. 197 of 1851, required the clerk to indorse on the judgment roll the time of filing the same, with a memorandum of the substance of the judgment, and a reference to the book and page in which it was entered; whereupon only the judgment was to become a lien on real estate. On examination of the printed case in *Sexton v. Rhames*, it appears that the clerk failed to make some of the required indorsements on the judgment roll. The action was ejectment by the purchaser from the sheriff under the judgment, against the judgment debtor. And the point was taken in the brief of counsel, that the sale was void for the failure of the clerk to make the required indorsements, as a condition of the lien, under the statute. But the court thus summarily disposed of objections which the reporter seems not to have thought necessary to notice: "It is said that the clerk omitted to perform some ministerial duty in reference to the judgment rolls, such as stating the time they were filed, and referring to the page of the record, etc. But the neglect of the clerk to make these references, which evidently are for convenience in examining the records of judgments, could not invalidate the judgment. The records were filed and the judgments docketed, and everything done necessary to make them a lien upon the real estate of the judgment debtors." And in *Lathrop v. Snyder, supra*, on appeal from an order refusing to set aside a judgment on which execution had issued, the court overrules, without comment, the objection that no judgment roll had been filed.

The validity of the docket entries, in this case, as against the judgment debtor, to effect a lien of the judgment on his realty, and to support an execution and sale of it, thus appears not to be an open question in this court. And the only question remaining for us is the priority of the lien between the respondent's mortgage and the appellants' judgment. It is very certain that if the respondent, before he accepted the mortgage, had searched the docket of judgments against his

mortgagor, for judgment liens on the mortgaged premises, for the ten years of the statute, he would have found the prior lien of the appellant's judgment. And we therefore hold that the docket entries not only constitute a lien against the mortgagor, but were sufficient to give constructive notice of the lien to the mortgagee.

Statutes providing for registry of conveyances and for docketing of judgments cannot operate to give actual notice to subsequent purchasers or incumbrancers. These may accept titles without the searches necessary to give actual notice of the record. But the statutes operate to give constructive notice of conveyances validly recorded and of judgments validly docketed. And persons dealing in titles without making searches which would reduce constructive notice to actual notice, do so at their peril of the record. Constructive notice without search is equivalent to actual notice upon search.

In *Watson v. Wilcox*, 39 Wis., 643, which turned upon the constructive notice of a *lis pendens*, it was held that the statute charges every subsequent purchaser with constructive notice of the whole paper filed; the constructive notice of the statute being equivalent to actual notice by reading. And when one takes title to realty, he takes it with constructive notice of all of which the proper searches of title would have given him actual notice.

If the respondent had made the proper search for judgment liens, for ten years preceding the date of his mortgage, as he was charged by law to do at his peril, he would have had actual notice of the appellants' judgment, and so, presumably, have avoided this apparent conflict of liens, a direct consequence of his own *laches*. Had he then made the proper search, the place of the docket entries of the appellants' judgment would have been immaterial, for all purposes of notice to him. Failing to make the search, the constructive notice of the statute is equivalent to the actual notice which the search would have given him.

It appears that the respondent trusted to an abstract of title, fractionally compiled from time to time, by different private persons, who follow the business of making abstracts of title. It appears that the judgment was docketed, out of place, in the interval between the dates of two fragments of his abstract; that each person who carried the abstract on, was not employed to verify, and did not verify, the work of his predecessors on it; and that thus it failed to give him actual notice of the judgment. We are not called upon to express any opinion upon this fashion of taking titles. Whoever adopts it, does so at his peril that the record may give him constructive notice of conveyances or liens, of which his abstract does not give him actual notice. And the proof in this case only goes to show that the respondent had not actual notice of the judgment; but cannot excuse him from constructive notice of all that the records would have disclosed to him, had he examined them before he accepted his mortgage. The abstract is a private paper; and it cannot operate to excuse the respondent's want of actual notice any more in this case than if the judgment had been docketed in its order of date, and been overlooked by some of the persons compiling the abstract. No custom can substitute the actual notice of such private abstract for the constructive notice of the public records.

Many decisions elsewhere, bearing on this point, were cited by counsel on both sides. Some of them go to confirm the views which we have expressed; some are more or less in conflict with them; many of them are in cases clearly distinguishable from this. Taken together, we think that they tend to confirm our views. A critical examination of them, in connection with our views of this case, would be interesting; but we have no leisure for it. We consider the case virtually controlled by the decisions of this court cited. And when such is the case, we do not always feel called upon to enter into an elaborate consideration of decisions elsewhere.

*By the Court.* — The judgment of the court below is re-

versed, and the cause remanded for judgment in accordance with this opinion.

A motion for a rehearing was denied.