MUSA, Respondent, vs. SEGELKE & KOHLHAUS COMPANY and another, Appellants.

*March 9—April 7, 1937.*

*Jos. F. Studnicka* of Milwaukee, for the appellants.
*Max E. Geline* of Milwaukee, for the respondent.

FRITZ, J.    The undisputed facts are that on July 22, 1915, when the plaintiff, Julia Musa, was the wife of Adam Musa,

the premises in question were conveyed to them, as husband and wife, and the survivor of them; that the defendant Segelke & Kohlhaus Company is the owner of an unpaid judgment for $805.87, obtained and docketed against Adam Musa on April 7, 1928, in the civil court of Milwaukee county; that he died in 1932; that no execution was issued on the judgment until, on May 22, 1936, the civil court ordered the issuance of such an execution against the right, title, and interest of Adam Musa in the premises, which are non-exempt real property located in Milwaukee county; and that the sheriff intended and was about to make levy and sale under the execution of the right, title, and interest of Adam Musa in the premises as of the date of the docketing of the judgment.

The defendants contend that although the title to the premises was held, from July 22, 1915, to the time of Adam Musa's death, in joint tenancy by him and the plaintiff, Julia Musa, who survived him, nevertheless, under the definite wording of sec. 272.14, Stats., it was intended that the lien rights given a judgment creditor by sec. 270.79, Stats., were not to be defeated by the death of the judgment debtor, even though his interest or estate was but that of a joint tenant; and that by sec. 272.14, Stats., such lien rights were only suspended to afford the debtor's heirs and personal representatives an opportunity to adjust his affairs.

So far as here material, it is provided in sec. 270.79, Stats. 1927, that,—

"Every such judgment, when so docketed, shall, for a period expiring ten years from the date of the rendition thereof, be a lien on the real property in the county where the same is docketed, except the homestead . . . of every person against whom such judgment shall be rendered and docketed. . . ."

And in sec. 272.14, Stats. 1935, that,—

"After the expiration of one year from the death of a judgment debtor execution may be issued against any prop-

erty upon which the judgment is a lien and may be executed in the same manner and with the same effect as if he were still living. . . ."

Under these provisions the mere docketing of a judgment results at most in nothing more than a lien on the real property of the judgment debtor; and the manner in which, and the effect with which, the judgment may be executed is but the same "as if he were still living." Such a lien, under a judgment "does not constitute or create an estate, interest, or right of property in the lands which may be bound for its satisfaction; it gives merely a right to levy on such lands to the exclusion of adverse interests subsequent to the judgment." 34 C. J. p. 569, § 872 C. "In theory," as is stated in 15 R. C. L. p. 797, "a judgment is but a security for a debt, and the lien of a judgment on lands does not constitute, in law, *per se,* a property or right in the land itself, and a plaintiff who obtains a judgment does not thereby acquire any interest or estate in the property." Those propositions are well established. *Lee v. Keech,* 151 Md. 34, 133 Atl. 835, 46 A. L. R. 1488; *Roy v. Abraham,* 207 Ala. 400, 92 So. 792, 25 A. L. R. 101; *Eaton v. Doub,* 190 N. C. 14, 128 S. E. 494, 40 A. L. R. 273; *Oklahoma State Bank v. Burnett,* 65 Okla. 74, 162 Pac. 1124, 4 A. L. R. 430; 2 Freeman, Judgments, § 915; 1 Black, Judgments, § 400.

On the other hand, it is likewise a well-established rule that a judgment becomes a lien upon such interest only as the judgment debtor actually had in the premises at the time when it was docketed or thereafter acquired therein, prior to its expiration. *Stanhilber v. Graves,* 97 Wis. 515, 73 N. W. 48. As is stated in 34 C. J. p. 591, § 903 I 1:

"The lien of a judgment attaches to the precise interest or estate which the judgment debtor has actually and effectively in the land, and only to such interest; the lien cannot be made effectual to bind or to convey any greater or other estate than the debtor himself, in the exercise of his rights, could voluntarily have transferred or alienated, except in a few jurisdic-

tions where, by reason of the language and construction of the recording acts, a judgment creditor is put substantially on the basis of a *bona fide* purchaser. . . . If the debtor's interest is subject to any infirmity or condition by reason of which it is eliminated or ceases to exist, the lien attaching thereto ceases with it."

*Oklahoma State Bank v. Burnett, supra; Lee v. Keech, supra; Eaton v. Doub, supra.*

Consequently, the lien of the judgment in question could attach only to such interest or estate as Adam Musa actually and effectively had in the premises. However, as his interest or estate continued to be that of a joint tenant, while he was alive, it was at all times subject to and limited by the right of survivorship, which is a special incident of every joint tenancy, and by reason of which, on the death of one joint tenant, his interest goes to his survivor. *Bassler v. Rewodlinski,* 130 Wis. 26, 28, 109 N. W. 1032. In that case there was applied the well-established rule that unless the joint tenancy has been destroyed during the lifetime of the joint tenants by an effective severance of the interest of one from the interest of the other joint tenant, so as to destroy the unity of title, they continue as joint tenants until, upon and by reason of the death of one, the survivor becomes the sole and absolute owner of the property, and there consequently exists no longer any interest or property right whatsoever in the deceased joint tenant or his estate. For that reason, it was then held that, in the absence of such an effective severance during the lives of the joint tenants, there remains no interest or property right in a deceased joint tenant or his estate upon his death, which can be passed or incumbered by his will, and it is inoperative as to premises held by him in joint tenancy.

For the same reasons, upon the death of a joint tenant, there remains no interest or property right in the deceased in the premises held by him in joint tenancy up to the time of his death, in respect to which there can be operative an execu-

tion issued after his decease on a judgment against him, unless it can be said that by reason of the mere lien, arising from the docketing thereof, there was an effective severance of the deceased debtor's interest as a joint tenant from the interest of his cotenant, even though no execution was issued or levy made on his joint tenancy interest during the deceased's lifetime. Notwithstanding the diligence of counsel and our efforts, no precedent has been found to the effect that an effective severance of a joint tenancy occurs by reason of merely the lien which exists as the result of the docketing of a judgment. Freeman on Cotenancy and Partition (2d ed.), after stating in section 29 that "A joint tenancy may be severed in three ways: 1st, by an act of one of the tenants operating on his own share, and creating a severance as to that share; 2nd, by mutual agreement; and 3rd, by such a course of dealing as intimates 'that the interests of all were mutually treated as constituting a tenancy in common,'" continues, "To this may be added, as a fourth means of severance, proceedings against the joint tenant producing an involuntary alienation of his title." And then in section 33 there is a statement (supported by *Davidson v. Heydon*, 2 Yeates (Pa.), 459, 463) that "The *issuing of execution* on a judgment operates as a legal severance, if, without any further proceedings, a *venditioni exponas* may be taken out and the lands sold." However, under that statement, an execution having the stated effect must have been issued in order to operate as a legal severance.

On the other hand, in *People's Trust & Sav. Bank v. Haas*, 328 Ill. 468, 160 N. E. 85, 86, the court, in holding that the lien of the judgment against the interest of a deceased joint tenant was extinguished by his death, and that a surviving joint tenant, Emma L. Horney, became the sole owner, said,—

"Appellant argues that Field & Co. followed the procedure required by law to perfect a lien on lands not registered, and

that what it did operated to sever the joint tenancy of Samuel E. and Emma L. Horney; that the filing of the transcript of the judgment is analogous to filing a contract of purchase for record prior to a transfer of the property. We cannot agree to that proposition. Nothing was done by the Horneys or anyone else prior to Samuel's death, to sever the joint tenancy. By law the fee vested in Emma, as survivor of the joint tenants, upon Samuel's death, and we are of opinion the court did not err in rendering the decree."

That case is cited in Thompson, Real Property (1929), § 1717, in support of the statement,—

"The mere filing by a creditor of a joint tenant of a memorial of his judgment in the registrar's office prior to the death of the joint tenant, judgment debtor, does not operate as a severance and the survivor takes the whole free from the lien of the judgment, in the absence of any other steps taken by the creditor to sever the title."

That proposition seems sound. Therefore the trial court rightly concluded that there was no effective severance of the joint tenancy interests in question during Adam Musa's lifetime; that, consequently, all of his right, title, and interest in the premises became extinguished and ceased upon his death; and that thereupon the entire right, title, and interest therein vested in the plaintiff by virtue of the deed conveying the premises to her and Adam Musa in joint tenancy.

*By the Court.*—Judgment affirmed.