NORTHERN STATE BANK, Respondent, v. TOAL, Personal Representative, and others, Defendants: FIRST NATIONAL BANK OF APPLETON, Appellant.

*No. 395. Submitted under sec. (Rule) 251.54 March 6, 1975.—Decided June 16, 1975.*

(Also reported in 230 N. W. 2d 153.)

For the appellant the cause was submitted on the brief of *Fulton, Menn & Nehs Ltd.*, attorneys, and *Peter S. Nelson* of counsel, all of Appleton.

For the respondent the cause was submitted on the brief of *Sigman, Sigman, Shiff & Janssen* of Appleton.

DAY, J.  This is an appeal from a judgment of foreclosure made and entered on July 11, 1973. The principal question raised on this appeal is, does a purchase money mortgage on real estate take precedence over judgments entered against the mortgagor prior to the acquisition of the real estate covered by the purchase money mortgage? We hold that such purchase money mortgage has priority over such prior judgments. Other questions raised by the appellant First National Bank of Appleton (First National) will be discussed in the opinion.

On November 9, 1967, the defendant-appellant took a judgment against Mr. E. Patrick Toal in the county court of Outagamie county for $30,258.56. This judgment was partially satisfied as of the date of the commencement of the foreclosure action involved in this case and left a balance of $18,736.78 unsatisfied. At the time the judgment of First National was entered and docketed, the Toals were living in a rented house. Mr. Toal had had a banking relationship with the plaintiff-respondent Northern State Bank (Northern State) and on November 18, 1969, made written application to Northern State for a mortgage loan in the amount of $27,000 to purchase a

home at 1613 Carver Lane, Appleton, Wisconsin. The purchase price was $34,000 and Mr. Toal was to pay $7,000 of his own money and to use the $27,000 mortgage to pay the balance of the purchase price. The written application for the mortgage by Mr. Toal showed that he listed his gross income at $60,000 per year with a $24,000 net income but that his debts exceeded his assets. Among the debts listed was the prior outstanding judgment of First National.

Northern State sought legal advice as to the priority of their purchase money mortgage over the judgment of First National and was advised by its attorney that the purchase money mortgage would take precedence.

On November 24, 1969, Northern State took a mortgage on the Carver Lane property for $27,000; Mr. Toal added $7,000 of his own funds; Mrs. Toal contributed nothing to the purchase price.

Mr. Toal defaulted in his mortgage payments and died intestate on November 15, 1971. Mrs. Toal was appointed personal representative of his estate. The estate was insolvent. The mortgage foreclosure action was commenced by Northern State against the various parties named as defendants. Eugene J. Sperry and Eleanor Sperry were owners of record of an outstanding judgment against Mr. Toal; Homemaker's Finance Service, Incorporated had two subordinate mortgages of record on the Carver Lane property; the state of Wisconsin and the United States of America had tax liens filed against Mr. Toal. The state of Wisconsin and the United States of America filed notices of appearance. Only First National answered and contested the foreclosure, claiming priority of its judgment lien over Northern State's purchase money mortgage.

While the action was pending and pursuant to stipulation among the parties, a court order was entered which allowed the sale of the property with the proceeds of the

sale to be held in escrow and it was agreed that the foreclosure was to proceed against the net proceeds of the sale as though the real estate asset still existed.

Trial on the issue was held on June 29, 1973, and the judgment provided that Northern State, as of June 29, 1973, was entitled to $25,724.45 principal and interest, together with the further sum of $1,500 attorney's fees and the sum of $82.58 disbursements.

Pursuant to stipulation the property was sold for the gross price of $35,000, from which were deducted real estate commission, attorney's fees, and various expenses, leaving a net amount in the escrow account of $31,555.05.

First National argues that because Northern State had actual or constructive knowledge of its judgment filed against Mr. Toal, that judgment became a lien against the Carver Lane property as soon as it was acquired by Mr. Toal and took precedence over the purchase money mortgage. We disagree.

Appellant First National states in its brief that where one takes a mortgage with knowledge of another outstanding encumbrance, he is not a purchaser in good faith and that such judgment lien is entitled to priority and is superior to all subsequent conveyances of the property, citing *Hesse v. Mann* (1876), 40 Wis. 560; *Bartz v. Paff* (1897), 95 Wis. 95, 69 N. W. 297; *R. F. Gehrke Sheet Metal Works v. Mahl* (1941), 237 Wis. 414, 297 N. W. 373. However, none of the cases cited by First National involved a purchase money mortgage. First National states that it has not found any Wisconsin cases creating an exception to the rule for purchase money mortgages, but neither has it found any case involving a purchase money mortgage that stands for the proposition it would ask this court to follow.

The trial judge found that the mortgage given herein by Toal was given to purchase the Carver Lane property

and was a purchase money mortgage. This finding by the court is amply supported by the evidence.[1]

The trial court cited the case of *Rees v. Ludington* (1860), 13 Wis. 308 (*276), 80 Am. Dec. 741, in support of its position that the purchase money mortgage had priority. In that case Rees had contracted with Hull in November, 1856, that Rees would convey to Hull certain property by executing a deed to him over a year later on December 1, 1857. On receiving the deed from Rees, Hull was to give Rees back a bond and "mortgage for the purchase money." In the year between the contract and deed and mortgage, Hull was to make certain improvements on the property; Hull did so, and the lien of Ludington grew out of materials furnished for that purpose. The improvements were completed as required by the contract and the deed and purchase money mortgage back were executed on November 18, 1857. This was several months after Ludington's mechanic's lien attached. In the foreclosure action, Ludington asserted the superiority of its lien which was prior in time. This court concluded otherwise and the conclusion was based specifically on the fact that the mortgage Rees took was for the purchase money of the property he deeded to Hull. Our court made it clear that Ludington was in the same position as a judgment creditor and that the purchase money mortgage took priority. The fact that in *Rees* the purchase money mortgage was given by the seller of the land is not different under our statute than where the purchase money is furnished by a third party for the acquisition of the land as was done here in the instant case by Northern State.

---

[1] "708.09 **Purchase money mortgage defined.** A purchase money mortgage is one given as part of the transaction of purchase to the vendor of real estate for all or part of the purchase money or to a 3rd person who advances all or a part of the purchase money."

The trial court also cited Osborne, *Mortgages* (1970), p. 388, sec. 213, where it is said:

"It is familiar learning that a purchase money mortgage, executed at the same time with the deed of purchase of land, or in pursuance of agreement as part of one continuous transaction, takes precedence over any other claim or lien attaching to the property through the vendee-mortgagor. This is so even though the claim antedates the execution of the mortgage to the seller. It will also have priority if it is in favor of a third person who advanced the purchase money paid to the vendor, provided the money was loaned for this purpose only."

We agree with the general rule as stated in 46 Am. Jur. 2d, *Judgments*, p. 503, sec. 301, where it is said:

"It is a recognized principle that a mortgage for the purchase money of land, which mortgage is executed at the time of the delivery of the conveyance of the legal title, has priority, as to the land conveyed, over existing judgments and executions against the vendee, whether the mortgagee is the vendor or a third person who furnishes the purchase price."

*See also:* 55 Am. Jur. 2d, *Mortgages*, pp. 408, 409, secs. 348, 350; 49 C. J. S., *Judgments*, p. 936, sec. 485e; 59 C. J. S., *Mortgages*, pp. 300, 301, sec. 231a. In 5 Tiffany, *Real Property* (Jones ed., 1939), pp. 460–462, sec. 1462, it is stated that purchase money mortgages are entitled to priority over an earlier judgment against the mortgagor. Tiffany uses the rationale that the purchase money mortgage is in effect a limitation upon the title which the grantee takes, rather than an encumbrance on the title conveyed. In the official manual published by the Wisconsin Real Estate Examining Board (rev. ed., 1970), written by Professors Effland, McDonald, and Rauschenbush of the University of Wisconsin Law School, it is stated that a purchase money mortgage takes priority over judgment liens even though those judgment

liens were prior to the acquisition of the property on which the purchase money mortgage is given.

We hold that in this case the purchase money mortgage of Northern State had priority over the judgment lien of any of the other defendants, including First National.

The deed to the Toals on the Carver Lane property conveyed the property to them as "husband and wife as joint tenants." First National argues that no joint tenancy was created at the time the property was conveyed to the Toals because of the existence of its judgment against Mr. Toal. This is not the law in Wisconsin. The law here was settled in the case of *Musa v. Segelke & Kohlhaus Co.* (1937), 224 Wis. 432, 272 N. W. 657. Mr. Toal did not acquire an interest "different" than that of Mrs. Toal in the property. In the *Musa Case,* a husband and wife acquired property in joint tenancy in 1915. A judgment was docketed against the husband in 1928 but no execution was issued on the judgment before his death in 1932. Later the judgment creditor attempted to levy on the interest of the deceased husband. The Wisconsin Supreme Court held that the creation of a lien by the docketing of the judgment without issuance of execution did not sever the joint tenancy and since the husband's interest during his life was subject to the right of survivorship, no interest remained after his death upon which an execution could operate. *See also: Eloff v. Riesch* (1961), 14 Wis. 2d 519, 522, 111 N. W. 2d 578. Since First National's judgment was not levied and executed during Mr. Toal's lifetime, the joint tenancy continued unsevered. When Mr. Toal died his interest therein passed to the surviving joint tenant Mrs. Toal, free of the claims of his creditors.

This result is not altered by sec. 700.24, Stats., which provides:

"A real estate mortgage, a security interest under ch. 409, or a lien under ss. 45.37 (12), 71.13 (3) (b), 72.86

(2), chs. 49 or 289 on or against the interest of a joint tenant does not defeat the right of survivorship in the event of the death of such joint tenant, but the surviving joint tenant or tenants take the interest such deceased joint tenant could have transferred prior to death subject to such mortgage, security interest or statutory lien."

In a comment, *Concurrent Ownership: Joint Tenancy & Tenancy in Common Under Chapter 700,* 55 Marq. L. Rev. (1972), 321, 345, the writer, citing *Musa* says:

"Section 700.24 is a re-enactment of Wisconsin Statutes section 230.455, with an updating of the phraseology 'chattel mortgage, conditional sales contract' to 'ch. 409,' which covers all secured transaction not relating to land. The effect of this section is to avoid a severance of the joint tenancy when the enumerated liens are placed upon the property, but the liens remain in force against the surviving joint tenant. This is not the case with judgment liens, however. By case law, the mere docketing of a judgment by a judgment creditor, without execution, does not sever the joint tenancy, although it does create a lien upon the debtor's interest in the property. Therefore, if the debtor dies following the docketing of the judgment, but prior to execution on it, the surviving joint tenant takes the entire interest in the property free of the judgment creditor's lien, since the interest of the debtor in the property which was the subject of the lien has been extinguished."

In the instant case, the finding of the trial court that this was homestead property as well as being property held in joint tenancy is correct. The facts show that the Carver Lane property was occupied by Mr. and Mrs. Toal immediately upon their acquisition of it and that it continued to be a homestead for Mrs. Toal after Mr. Toal's death. The argument of First National that this could not be a homestead because it was not a homestead at the time its judgment was docketed is without merit. First National cites cases for the proposition that property not occupied as a homestead when a judgment lien

attaches is subject to that lien and is not exempt as a homestead even though occupied as such when execution is attempted. But the facts in the cases cited by First National arose where the property was owned by the debtor when the judgment was docketed, but was not then occupied as a homestead. After the lien attached, the owner moved onto the property, occupied it as a homestead, and asserted the homestead exemption against execution of the lien, but the exemption was properly held inapplicable. The judgment lien had already attached to the property when it was docketed and subsequent attempt to change the status of the property to exempt it from the creditors' claims would be unsuccessful. *See: Estate of Hogan* (1939), 229 Wis. 600, 282 N. W. 5; *Upman v. Second Ward Bank* (1862), 15 Wis. 492 (*449). The result is otherwise where the property was not owned by the debtor when the judgment was docketed but was later purchased and then immediately occupied as a homestead, as was the case here. When the property is thus acquired, it immediately becomes an exempt homestead to the extent of the statutory protection. This is the situation in the case before us. It is governed by the case of *Schwitzke v. American Nat. Bank* (1943), 242 Wis. 521, 8 N. W. 2d 303. In that case the Schwitzkes lived in a rented house and the bank then docketed a judgment against Mr. Schwitzke. Later, the Schwitzkes purchased and occupied certain other property as their homestead. This court held that property exempt from the bank's judgment lien because it was the Schwitzkes' homestead. The rationale behind the homestead exemption is discussed in the case of *Scofield v. Hopkins* (1884), 61 Wis. 370, 374, 21 N. W. 259, wherein our court stated:

"The policy of the law is to secure to the debtor and his family a homestead which shall be beyond the reach of his creditors, however numerous. . . . This policy of

the statute would certainly be frustrated if none are entitled to the exemption except those who have been so fortunate as to obtain a homestead prior to becoming judgment debtors. . . . If it is also true that there can be no exemption until there is a dwelling-house upon the premises, actually occupied by the debtor personally, then it would be almost impossible for a homeless debtor, with judgments docketed against him, to get the benefit of the law; for the very instant he acquired the title, the judgment lien would attach. Under such a construction, the only possible way of securing such benefit would be to select premises with a dwelling already thereon, and then actually occupy, with the family, prior to the acquisition. But such strict literalism would do violence to the obvious intent of the legislature, and the whole current of authority in this state upon this subject. It was among the purposes of the statute to enable any one without a home of his own to acquire one, even though judgments may be docketed against him when he embarks in the enterprise."

The homestead exemption law applies to the Carver Lane property in the instant case. The property is exempt from First National's judgment lien up to $10,000 but is not exempt from Northern State's purchase money mortgage. Sec. 272.20, Stats. 1971.

We consider the argument of First National that the granting of the purchase money mortgage to Northern State constituted a fraudulent conveyance to be without merit. We likewise consider without merit the argument that Northern State was somehow "negligent" in the granting of the mortgage and should therefore not be permitted to utilize a court of equity to foreclose its purchase money mortgage. We find nothing in the record to indicate that such action would be warranted.

In its judgment the court further provided:

"5. It is Further Ordered and Adjudged, that after payment of the amounts due to the plaintiff, there be surplus funds, then in that event, all persons claiming an interest in said surplus, file their respective claims, if

any, with the Clerk of this Court in accordance with Sec. 278.162 of the Wisconsin Statutes, subject to the further Order of the Court."

We agree with the judgment of the trial court.
*By the Court.*—Judgment affirmed.