**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Carole F. LIBRIZZI, Defendant–Appellee.**

No. 95–2550.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1996.

Decided March 5, 1997.

Thomas P. Schneider, Office of U.S. Atty., Milwaukee, WI, Gary R. Allen, William S. Estabrook (argued), Marion E. Erickson, Department of Justice, Tax Division, Appellate Section, John A. Marrella, Washington, DC, for plaintiff–appellant.

William A. Jennaro, Thomas J. Lonzo, Pamela A. Johnson (argued), Cook & Franke, Milwaukee, WI, for defendant–appellee.

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case presents a narrow question about the scope of a valid federal tax lien on property the taxpayer held in joint tenancy, when the lien attaches (and is recorded) prior to the taxpayer's death, but the Internal Revenue Service forecloses on the lien some two years later. Mrs. Carole Librizzi, an innocent spouse, argues that the Government may recover no more than one-half the value of the property at the time of her husband's death, while the United States asserts that once the lien attached to the property, it may recover one-half the amount the property fetches at the foreclosure sale. Although the district court ruled for Mrs. Librizzi, we con-

clude that the United States has the better of the argument, and we therefore reverse.

The underlying facts are undisputed. In 1975, Salvadore Librizzi (the taxpayer) and his wife Carole acquired real property located at 307 East Carlisle Avenue, Whitefish Bay, Wisconsin, which they held under Wisconsin law as joint tenants with a right of survivorship. A decade later, in 1985 and 1986, the Secretary of the Treasury made a number of tax assessments totaling $1,468,-312.72 against Mr. Librizzi relating to wagering activities and associated interest and penalties. When Mr. Librizzi did not pay the amounts due, a federal tax lien arose pursuant to 26 U.S.C. § 6321, and attached to all property belonging to him. On September 26, 1986, and on December 15, 1989, the IRS filed Notices of Federal Tax Lien for Mr. Librizzi's assessed liabilities with the Register of Deeds, Milwaukee County, Wisconsin. Mr. Librizzi died on June 19, 1990, without having paid his taxes.

Upon her husband's death, Mrs. Librizzi took full title to the Carlisle Avenue property. Two years later, on October 6, 1992, the United States filed a suit for foreclosure of its liens under 26 U.S.C. § 7403 in the U.S. District Court for the Eastern District of Wisconsin. In that suit, Mrs. Librizzi conceded that the federal tax lien attached to Mr. Librizzi's one-half interest in the property and that when he died she acquired the property subject to that lien. She argued, however, that the Government's interest was limited to one-half of the estimated fair market value of the property at the time of Mr. Librizzi's death (that is, one-half of $152,500, or $76,250). This was an attractive position for her to take, because the property had appreciated in value during the time between his death and the suit: as of the time of suit, it was estimated to be worth some $173,100. The Government took the position that it was entitled to one-half the fair market value at the time of foreclosure, which would have yielded about $86,550—still considerably less than the amount due for the delinquent taxes. As noted above, the district court, relying on provisions of Wisconsin law we discuss below, granted summary judgment for Mrs. Librizzi, and the United States has appealed.

When dealing with tax liens under 26 U.S.C. § 6321, it has been settled for years that "state law controls in determining the nature of the legal interest which the taxpayer had in the property." *United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985) (citations and internal quotation marks omitted). See also *United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). The federal tax lien attaches to whatever rights or interests the taxpayer has under state law. *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925; *Rodgers,* 461 U.S. at 683, 103 S.Ct. at 2137. As the Wisconsin Supreme Court put it:

> ... the I.R.C. does not create any property rights, but merely attaches federally defined consequences to rights which are created under state law. Once state law has been used to determine the nature and existence of a property interest, further state law is inoperative, and the tax consequences thenceforth are dictated by federal law.

*Elfelt v. Cooper,* 168 Wis.2d 1008, 485 N.W.2d 56, 61 (1992) (citations omitted). Furthermore, the U.S. Supreme Court noted in *Rodgers* that "once a lien has attached to an interest in property, the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest." 461 U.S. at 691 n. 16, 103 S.Ct. at 2141 n. 16.

A federal tax lien attaches at the time the tax assessment is made, and it continues until the liability has been satisfied or it becomes unenforceable due to the lapse of time. 26 U.S.C. § 6322. See also *Jersey State Bank v. United States,* 926 F.2d 621, 622–23 (7th Cir.1991); *J.D. Court, Inc. v. United States,* 712 F.2d 258, 261 & n. 7 (7th Cir.1983). In this case, it is undisputed that the tax lien attached to Mr. Librizzi's undivided one-half interest in the Carlisle Avenue property in 1985 and 1986, at the time the assessments were made. Mrs. Librizzi argues, however, that the character of the lien changed at the time of Mr. Librizzi's death, when under the Wisconsin law of joint tenancy, Mrs. Librizzi became the sole owner of

the property. Wis. Stat. Ann. § 700.17(2)(a). At that point, she claims, the lien changed from an encumbrance on the interest in the property to an I.O.U. for the value of Mr. Librizzi's interest in the property on the date of his death. She relies principally on language in the Third Circuit's decision in *United States v. Avila*, 88 F.3d 229 (3d Cir.1996), but also on the Wisconsin Supreme Court's early decision in *Musa v. Segelke & Kohlhaus Co.*, 224 Wis. 432, 272 N.W. 657 (1937), to support this position.

In *Musa*, the Wisconsin Supreme Court considered the effect of a judgment lien on property held in joint tenancy, after the joint tenant who was the judgment debtor died. The judgment lien there had been docketed, but not executed, on the date of the debtor's death. The supreme court decided that "the lien of the judgment in question could attach only to such interest or estate as Adam Musa [the debtor] actually and effectively had in the premises." *Id.*, 272 N.W. at 658. Because his interest was only that of a joint tenant, it was limited by the right of survivorship. Upon his death, when the property passed to the other joint tenant, the judgment lien itself was extinguished: there was no more property of the debtor on which the lien could operate. Mrs. Librizzi does not take her argument as far as *Musa* might suggest, as she does not contend that the tax liens vanished when Mr. Librizzi died. She does say, however, that *Musa* means that the lien attached only to the interest Mr. Librizzi had while alive, and that this interest was finally determined as of the moment of his death.

Later legislation and court decisions in Wisconsin indicate that the *Musa* rule does not have the consequences Mrs. Librizzi claims for it. Section 700.24 of the Wisconsin Statutes addresses the effect of a joint tenant's death on certain liens (including, we note, state tax liens attached pursuant to Wisconsin law):

A real estate mortgage, a security interest under ch. 409, or a lien under s. 71.91(5)(b), s. 72.86(2), 1985 stats., ch. 49 or 779 on or against the interest of a joint tenant does not defeat the right of survivorship in the event of the death of such

joint tenant, but the surviving joint tenant or tenants take the interest such deceased joint tenant could have transferred prior to death subject to such mortgage, security interest or statutory lien.

Mr. Librizzi could have transferred his undivided one-half interest to Mrs. Librizzi before his death, by taking steps to sever the joint tenancy and then to convey his interest to her. In that case, the federal tax lien would have continued to encumber his one-half interest in her hands. See, *e.g., United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien[.]"). The effect of § 700.24 is to make it clear that the same result follows even if he did not go through those steps during his lifetime. When the undivided one-half interest passed to Mrs. Librizzi by operation of law, it came encumbered with the federal tax lien.

Taking another approach, Mrs. Librizzi points to *Avila*, in which the Third Circuit held that the Government could recover on a tax lien imposed on a husband's one-half interest in a joint tenancy, even though the property had later been transferred to his wife (first for a payment of $100, and later in a divorce settlement). There, as here, the district court had held that the Government could recover only the amount that the lien was worth at the time the debtor transferred his interest to his wife. Citing the Ninth Circuit's decision in *Han v. United States*, 944 F.2d 526 (9th Cir.1991), the court reversed, holding that "because the lien is unaffected by sale, we see no basis for fixing the amount of the lien at the time of sale." *Avila*, 88 F.3d at 233 (internal quotations omitted). The lien continued to attach to the debtor's entire former interest in the property, limited only by the amount of the debt it secured and a third party's right to equitable subrogation (a complication not present in Mrs. Librizzi's case).

So far, *Avila* provides more support for the Government's position than the reverse, but Mrs. Librizzi relies on one additional part of the *Avila* decision to support her claim for a limitation on value. Similar to the Wisconsin court in *Musa*, the Third Cir-

cuit stated that if the debtor predeceased his wife, then the lien would be extinguished. *Id.* at 236. This conclusion resulted from the court's analysis of New Jersey law, which did not include anything like Wis. Stat. Ann. § 700.24. As we hinted earlier, we think the "extinguishment" argument for purposes of the present case proves either too much or too little. If Mr. Librizzi's death truly extinguished the lien, then the Government would be entitled to nothing, not to the value of the debtor's interest at the time of his death. The state statute rules out this possibility, however. In a later case construing both the statute and *Musa*, the Wisconsin Supreme Court recognized that the rule for judgment liens is different from the rule for the types of liens mentioned in § 700.24. See *Northern State Bank v. Toal*, 69 Wis.2d 50, 230 N.W.2d 153, 156 (1975) (judgment liens must be executed before the debtor's death in order to sever the joint tenancy and avoid being extinguished by the spouse's right of survivorship). Liens covered by the statute are unlike unexecuted judgment liens because they remain in force against the surviving joint tenant. See John E. Talsky, Comment, Concurrent Ownership: Joint Tenancy & Tenancy In Common Under Chapter 700, 55 Marq. L.Rev. 321, 345 (1972) (noting that under Wis. Stat. Ann. § 700.24, tax liens imposed under Wis. Stat. Ann. § 71.91 remain attached to the property even after the debtor spouse's death).

Finally, nothing in *Musa* or *Avila* supports the rather odd notion that the lien survived Mr. Librizzi's death, but became frozen in value as of the date of his death. The Government notes that such a rule might be unwelcome to an innocent spouse if the value of the property had declined after the date of death, since in that event she would be required to pay more than one-half the fair market value at sale. But we do not need to explore this possibility further, other than to note that the rule we adopt is not systematically biased either for or against the taxpayer. Under Wisconsin law, the tax lien ran against Mr. Librizzi's undivided one-half interest. If the Government had enforced its lien during his lifetime, it could have compelled a severance of the property and Mrs. Librizzi would have received only her one-half interest (plus an additional uncontested $21,719.25 which she paid to retire the balance of the mortgage). Wisconsin law gives her no more interest in the estate she received through the joint tenancy rule of survivorship than she would have had if Mr. Librizzi had lived.

We therefore REVERSE the judgment below and REMAND for further proceedings consistent with this opinion.

EVANS, Circuit Judge, dissenting.

My colleagues find Ms. Librizzi's contention that the federal tax lien extends only to the value of the property at the time of her husband's death to be an "odd notion." If it is odd, it is not the first, nor will it be the last, odd notion to grow out of what a legislature has done.

As the court correctly notes, we must look to Wisconsin law to evaluate Ms. Librizzi's claim. There we find that joint tenancy is different from other types of co-ownership, and survivorship is a concept with considerable force, as *Musa v. Segelke & Kohlhaus Co.*, 224 Wis. 432, 272 N.W. 657 (Wis.1937) illustrates. If *Musa* were all Wisconsin had to say on the subject, we would have to conclude that the IRS lien was extinguished altogether upon Mr. Librizzi's death. The result in *Musa* is part of the court's recognition of the special nature of a joint tenancy, in which upon the death of one joint tenant the survivor becomes the "sole and absolute owner of the property, and there consequently exists no longer any interest or property right whatsoever in the deceased joint tenant or his estate." 224 Wis. at 436, 272 N.W. 657. *Musa* also tells us that in the absence of a severance of the joint tenancy, "there remains no interest or property right in a deceased joint tenant or his estate upon his death...." *Id.* Joint tenancy then presents a unique situation—one in which the usual rule that a lien follows the property does not hold true under the common law.

However, as my colleagues also point out, *Musa* is not the last word in Wisconsin law. Section 700.24, Wisconsin Statutes, enacted some 8 years after *Musa*, provides that some liens are not extinguished upon the death of

a joint-tenant/debtor. State tax liens are among those which are not extinguished, and for that reason Ms. Librizzi does not argue that the federal tax lien is extinguished. But what is the lien attached to?

On this point, I acknowledge that the statute is not as clear as a bell. But if it is read in light of Wisconsin joint tenancy law, it seems to me that Ms. Librizzi should win this case.

To back up a moment, there is a difference between a transfer of an interest in a joint tenancy either by sale or through court order upon a divorce and the transfer of ownership which occurs through survivorship upon the death of a joint tenant. See, e.g., *Eloff v. Riesch*, 14 Wis.2d 519, 111 N.W.2d 578 (1961); *Wozniak v. Wozniak*, 121 Wis.2d 330, 359 N.W.2d 147 (1984). The former severs the joint tenancy and consequently eliminates survivorship; the transfer of interest is like the sale of any other property. In that case, the seller receives the value as of the moment of the sale and the buyer receives the property subject to any lien which may exist on the property. If Mr. Librizzi had found a buyer for his interest in the property, that incredibly foolish fellow would have taken title subject to a huge federal tax lien. The lien would follow the property and become the problem of the buyer, and the value of Mr. Librizzi's interest would never be more than it was at the moment of the sale. In contrast, in the transfer of ownership through joint tenancy, absent a statute such as § 700.24, the lien is extinguished, and the survivor takes all. In short, obtaining property through survivorship is different from buying it.

Section 700.24 both affirms the right of survivorship and somewhat limits it. The surviving tenant takes "the interest such deceased joint tenant could have transferred prior to death subject to such ... statutory lien." Notably, the statute does not say simply that the surviving tenant takes the interest of such deceased joint tenant subject to the lien. It is the interest the deceased "could have transferred prior to death." It does not seem to me to be unduly odd to say that "prior to death" was put in the statute for a reason, and the reason is to limit the

reach of the lien in the case of a transfer of ownership through survivorship. The lien attaches to the value of the interest in the property "prior to death"; that value is, after all, what could have been transferred. Reading the statute this way is consistent, I believe, with the often repeated statement regarding joint tenancy that after death neither the deceased nor his estate has any interest whatsoever in the property.

Under this reading of the statute the IRS's interest in the property is worth less when the ownership is transferred under survivorship than it would have been if, while still alive, Mr. Librizzi transferred his interest to Ms. Librizzi and severed the joint tenancy. The statute, I think, tries to strike a balance between the rights of survivors and the rights of lien holders, sustaining the lien but putting a limit on the damage it can inflict on a survivor. For these reasons, I would find in favor of the innocent widow Librizzi and affirm the judgment of the district court.