SCHWITZKE and wife, Respondents, vs. AMERICAN NATIONAL BANK, Appellant.

*February 10—March 9, 1943.*

The cause was submitted for the appellant on the brief of *Bird, Smith, Okoneski & Puchner* of Wausau, and for the respondents on the brief of *Genrich & Genrich,* attorneys, and *Herbert L. Terwilliger* and *James A. Fitzpatrick* of counsel, all of Wausau.

FRITZ, J.   On this appeal the following facts appear without dispute in any material respect.   In March, 1931, the plaintiffs, George Schwitzke and his wife Harriet, sold their home and thereafter lived in rented quarters, and owned no interest in any real estate except the property acquired as hereinafter stated.   On June 25, 1936, the defendant, American National Bank, recovered a judgment against George Schwitzke for $743.88, which was duly docketed in the office of the clerk of the circuit court for Marathon county.   On November 4, 1936, Harriet Schwitzke entered into a land contract for the purchase of a vacant lot in the city of Wausau.   Under the contract, she was required to pay $25 per month to the vendor. When she made the final payment pursuant to the contract, she received a warranty deed, dated March 21, 1939, conveying the lot to her and her husband jointly.   It was by this deed, which was recorded April 1, 1939, that the husband first acquired any interest in the lot.

In addition the court found that in the summer of 1939, a few months after George Schwitzke so obtained an interest in the lot, plaintiffs negotiated with a contractor and builder

to prepare plans and specifications for the construction of a house to use as their permanent home thereon, and that they obtained figures showing the approximate cost thereof as planned, but were not able financially to pay for, or obtain money necessary to build, such a home; that in August, 1941, plaintiffs, having saved additional sums of money, again had a builder and contractor make plans and specifications for the construction of a dwelling house on the lot, and he, on September 6, 1941, began such construction by delivering materials thereon; that the contracts for such construction were reduced to writing on September 20, 1941, and the excavation of the cellar was begun in October, 1941, and the water and sewer connections were brought in from the street, and after this work had been done, the matter of financing the project by way of a loan was held in abeyance because of the question raised as to whether defendant's judgment was a lien upon the lot; that Harriet Schwitzke purchased the lot with the *bona fide* intention of making it the homestead of herself and her husband, and ever since the purchase they have been planning the house they intended to build for their use as a permanent homestead thereon; that, at the time that she received the unrecorded land contract in November, 1936, she took possession of the premises described therein, and she and her husband took further possession under the warranty deed dated March 21, 1939, and have been in possession of the premises ever since and never abandoned them as their homestead, although they did not actually reside thereon; that ever since acquiring their respective interests thereto, they have claimed the property as their homestead and intended it to be their *bona fide* homestead; and that after having commenced the construction of a permanent home thereon, and having been refused a loan to finance such construction, because of the apparent lien of defendant's judgment, George Schwitzke caused written demand to be served upon the defendant requesting a recordable release of the homestead from the ap-

parent lien. The court also found, pursuant to defendant's request, that during the fall of 1941, prior to any work or excavation upon the premises in question, Harriet Schwitzke inquired of a real-estate broker about a certain house and was shown through the property, but found it unsuitable; that thereafter the broker showed plaintiffs other residential property, none of which appeared satisfactory to them; and that in such negotiations the lot in question herein was valued by the broker and considered as a trade-in, and all such negotiations by Harriet Schwitzke were with the view of considering whether she would exchange the property herein in question for a different homestead, but none of the negotiations were consummated.

The court concluded that the contacts made by plaintiffs with a builder for the purpose of having plans and specifications drawn, and estimating the cost of the construction of a home, and the subsequent commencement of the work by placing materials upon the lot to be used in such construction, and the digging of a cellar and putting in of the sewer and water, were overt acts demonstrating the intention of the plaintiffs to declare the premises as their homestead, and that this intention and exemption thereof related back to the original purchase of the property; that these overt acts were performed within a reasonable time after George Schwitzke acquired an interest in the property; that plaintiffs did not at any time abandon their original intention of continuing to hold the premises as their homestead; and that as such it is exempt from the lien of the judgment.

On its appeal, defendant contends that because, when George Schwitzke acquired an interest in the lot by the deed of March 21, 1939, defendant's judgment of June 25, 1936, was already docketed, the overt acts on the part of plaintiffs, —which the court found and concluded demonstrated their intention to declare the lot as their homestead, and related back to the original purchase thereof, and were performed within

a reasonable time after George Schwitzke acquired an interest therein,—cannot be held sufficient to admit of holding that prior to the time the lien of defendant's judgment attached to George Schwitzke's interest there existed on the part of plaintiffs an intention in good faith to occupy the lot as a homestead. In thus contending, defendant claims that there was no overt act on or in connection with the lot until building material was first delivered thereon in November, 1941. This claim is contrary, however, to the court's finding, which is warranted under the evidence, that in the summer of 1939 plaintiffs negotiated with a builder relative to the preparation of plans and specifications for a home on the lot and the approximate cost thereof, but were unable financially to obtain the necessary money to build until September, 1941; and that Harriet Schwitzke purchased the lot with the *bona fide* intention of making it their homestead, and they intended ever since the purchase to build their permanent home thereon, and have been planning the house they intended to build thereon for use as such home. It was evidently in view of the facts thus found, that the trial court considered this case to be ruled in favor of the plaintiffs by the well-established rule that,—

"The *bona fide* intention of acquiring the premises for a homestead, without defrauding any one, evidenced by overt acts in fitting them to become such, followed by actual occupancy in a reasonable time, must be held to give to the premises answering the description prescribed in the statute the character of a homestead; and the homestead exemption thus secured covers not only the land, but such materials so used thereon, and relates back to the time of purchase with such intent to make the premises a homestead." *Scofield v. Hopkins,* 61 Wis. 370, 375, 21 N. W. 259; *Shaw v. Kirby,* 93 Wis. 379, 67 N. W. 700; *State Bank of Waupun v. Storm,* 169 Wis. 295, 172 N. W. 151.

As thus stated in the *Scofield Case, supra,* there is in the rule no such requirement, as defendant claims, that the overt

acts in fitting the premises to become the intended homestead must be manifested by some such act on or in connection with the property as the delivery of material thereon for the building of a home or the occupancy thereof before the judgment is docketed. On the contrary, to qualify that rule by adding any such requirement or condition would frustrate the policy and largely defeat one of the principal purposes of the homestead law, as recognized and stated in the *Scofield Case* as follows:

"The policy of the law is to secure to the debtor and his family a homestead which shall be beyond the reach of his creditors, however numerous. The statute seems to have been made for those who get in debt, and not for those who always pay their debts. Such need no exemption law, for they are a law unto themselves to that extent. This policy of the statute would certainly be frustrated if none are entitled to the exemption except those who have been so fortunate as to obtain a homestead prior to becoming judgment debtors. The spirit, if not the letter, of the law gives the right of acquisition, as well as protection after acquisition. There can be no such exemption without ownership. If it is also true that there can be no exemption until there is a dwelling house upon the premises, actually occupied by the debtor personally, then it would be almost impossible for a homeless debtor, with judgments docketed against him, to get the benefit of the law; for the very instant he acquired the title, the judgment lien would attach. Under such a construction, the only possible way of securing such benefit would be to select premises with a dwelling already thereon, and then actually occupy, with the family, prior to the acquisition. But such strict literalism would do violence to the obvious intent of the legislature, and the whole current of authority in this state upon this subject. It was among the purposes of the statute to enable any one without a home of his own to acquire one, even though judgments may be docketed against him when he embarks in the enterprise. The acquisition of a completed homestead is seldom instantaneous. Generally, it requires years of industry and economic living. The purpose necessarily precedes the inception of the work, and that is followed by successive steps,

until completion is attained. The land must be acquired, the location of the dwelling house designated, the cellar dug, the materials procured, the foundations laid, the superstructure erected, and then all fitted for a dwelling house, before actual occupancy with the family can take place. These successive steps in the acquisition of a completed homestead, made in good faith, come within the spirit of the statute, and are each entitled to the protection afforded by it." (pp. 374, 375.)

Those reasons and conclusions are applicable to the facts found by the trial court, as stated above, including the status of George Schwitzke, as a judgment debtor intent, when he acquired his interest in the property, upon the improvement thereof for use as his homestead; and in view thereof there were warranted the trial court's conclusions in its written opinion, that—

"Because, in the instant case, plaintiffs did not inclose the property, or place a well upon it, or keep their domestic animals upon the property, does not negative the fact that they intended the same to be their homestead, because, in the very nature of things in this day and age, it is customary for the construction of a home and improvement of real estate to be done as one continuous operation rather than piecemeal over a period of years. From the time the plaintiffs acquired the property in question they did nothing to negative their intention of claiming said property as their homestead. The mere fact that plaintiffs were considering the possibility of trading in this lot for another house shortly before they began construction of the dwelling house upon the lot does not indicate that they had abandoned their intention to claim this lot as their homestead. There is nothing to prevent a party from exchanging homesteads. . . . Under the circumstances, there has been no unreasonable length of time intervening between acquisition and occupation as a homestead."

*By the Court:*—Judgment affirmed.