**UNITED McGILL CORPORATION,**
**Appellant,**

v.

**GERNGROSS CORPORATION,** Aetna Casualty & Surety Co., Somers Construction Co., Inc., Fidelity and Deposit Company of Maryland

v.

**Thomas E. LITTLE and David E. Baker,**
**i/a/t/a/d/b/a Little & Baker and**
**Wilkes-Barre General Hospital.**

**No. 81–2911.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1982.

Decided Sept. 27, 1982.

See *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,* 372 F.2d 18 (3d Cir.

Kenneth M. Cushman, A. Paul Woolls (argued), Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant, United McGill Corp.

Charles A. Shaffer (argued), Flanagan, McFadden, Biscontini & Shaffer, Wilkes-Barre, Pa., for appellees, Gerngross Corp. and Aetna Casualty & Surety Co.

1966).

**53**

Before GIBBONS, WEIS and SLOVI-
TER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

United McGill Corporation appeals from a directed verdict in its diversity action for the recovery of the purchase price of materials allegedly sold and delivered to Gerngross Corporation and Little & Baker (L & B). Since the evidence presented a jury question as to Gerngross' liability, we reverse.

The evidence at trial suggests that L & B, a sub-subcontractor, ordered materials from United McGill for use in a construction project for which Gerngross was the subcontractor. After conducting a credit investigation which revealed L & B as a poor credit risk, Glen Farley, United McGill's assistant credit manager, approached Gerngross directly. According to Farley's notes of his telephone conversation with Fred Portelli, Gerngross' estimator and purchasing agent on the project, Portelli agreed that Gerngross would pay United McGill for material supplied to the project by means of a joint check payable to both L & B and United McGill. In those sections of his deposition which were read at trial, Portelli essentially confirmed Farley's version of the conversation, adding that he conditioned payment on approval of the invoices by L & B. Farley confirmed the joint check agreement in a letter to Gerngross read by both Portelli and Bob Brooks, Gerngross' project manager. Also in evidence were the bills of lading for shipment of the material to the project. Copies of these bills of lading were sent by United McGill both to L & B and to Gerngross. Plaintiff also introduced invoices containing shipment dates identical to the shipment dates of two of the three bills of lading introduced.

At the close of United McGill's case, the trial judge granted Gerngross' motion for a directed verdict, stating that the foregoing evidence was insufficient to support a jury finding that Gerngross was legally obligated to pay United McGill.

In determining whether a trial court has erred in directing a verdict, an appellate court must use the same standard as that used by the trial judge in granting the motion. *Edward J. Sweeney & Sons, Inc. v. Texaco,* 637 F.2d 105, 115 (3d Cir. 1980). The court must consider the entire record in the light most favorable to the non-moving party. The weight of the evidence is not determinative, but rather whether a reasonable trier of fact could find for the non-moving party. *See, e.g., Burchill v. Kearney-National Corp.,* 468 F.2d 384 (3d Cir. 1972).

 Here United McGill presented a prima facie case of an enforceable contractual relationship with Gerngross. Viewed in its most favorable light, the evidence supports a reasonable inference of a bargained-for agreement between two parties with the capacity to contract.[1] While United McGill did not establish the satisfaction or excuse of the condition which Gerngross argues was precedent to its duty to pay, it is the province of the jury to ascertain whether in fact such a condition exists in a disputed oral contract. *See McCormack v. Jermyn,* 351 Pa. 161, 164–67, 40 A.2d 477, 479–80 (1945); *Kirk v. Brentwood Manor Homes, Inc.,* 191 Pa. Super. 488, 492–93, 159 A.2d 48, 50 (1960). A reasonable jury could also conclude from the bills of lading which United McGill sent to both L & B and Gerngross that United McGill performed its part of the agreement and that Gerngross' failure to pay was a breach of contract.[2]

1. Gerngross argues that Portelli lacked the authority to enter into such a contractual relationship on Gerngross' behalf. Assuming that Gerngross has correctly characterized Portelli's responsibilities, his superiors were aware of Portelli's actions and did not bother to disillusion United McGill. When an agent is so cloaked with apparent authority to bind his principal the principal may not deny such authority. *See William B. Tanner Co. v. WIOO, Inc.,* 528 F.2d 262, 266–67 (3d Cir. 1975).

2. The evidence presented by United McGill also establishes an alternative ground for recovery according to the doctrine of promissory estoppel. *See* Restatement (Second) of Contracts § 90 (1979); *Universal Computer Systems, Inc.*

**54**

■ In support of the directed verdict, Gerngross argues that United McGill did not establish that the materials supplied were satisfactory. United McGill need not respond to allegations of defective materials in its prima facie case. Such an issue is more appropriately raised in Gerngross' defense. The cross-examination of plaintiff's witnesses on which the defense relies to establish faulty material was equivocal and not based on personal knowledge.

Gerngross also contends that United McGill failed to allege a writing sufficient to satisfy the nonwaivable provisions of Pa. Stat. Ann. tit. 33, § 3 (Purdon 1967). Such a claim is without merit if, as United McGill alleges, Gerngross intended not merely to guarantee the debts of another, but to ensure that its portion of the project was completed. *See Kampman v. Pittsburgh Contracting & Engineering Co.,* 316 Pa. 502, 506–07, 175 A. 396, 398 (1934); *M. Black & Sons, Inc. v. Burgundy Homes, Inc.,* 34 Lehigh Cty L.J. 177, 180–81 (Ct. of Common Pleas 1971). Moreover, United McGill also presented sufficient evidence in its case to support a reasonable inference that the oral agreement fell within an exception to the statute of frauds provision relating to the sale of goods valued at $500 or more. 13 Pa. Cons. Stat. Ann. § 2201(a) (Purdon 1982). When, between merchants, a writing in confirmation of the oral contract and sufficient to bind the sender is received, the recipient may not raise the statute of frauds as a defense unless he sends written notice of objection within ten days of receipt of the writing. 13 Pa. Cons. Stat. Ann. § 2201(b) (Purdon 1982). Similarly, the statute of frauds does not apply to an oral contract when the goods which are the subject of that contract have been received and accepted. 13 Pa. Cons. Stat. Ann. § 2201(c)(3) (Purdon 1982).

■ Regardless of the sufficiency of United McGill's evidence, however, Federal Rule of Civil Procedure 8(c) requires that a defense such as the statute of frauds be pleaded affirmatively to give fair notice to the plaintiff and trial court. When, as

*v. Medical Services Ass'n of Pennsylvania,* 628

here, the defense is first raised in appellee's brief and the record does not clearly support such a claim, appellee cannot claim that appellant's failure to satisfy the dictates of the statute of frauds justifies a directed verdict. *Cf. Continental Colleries v. Shober,* 130 F.2d 631 (3d Cir. 1942) (motion to dismiss for failure to state a claim is improper when failure to comply with statute of frauds does not clearly appear on face of complaint).

The judgment appealed from will be reversed and the case remanded for a new trial.

F.2d 820, 824–25 (3d Cir. 1980).