Susan KLEMME, special administrator for the Estate of Patricia M. Day, Plaintiff-Respondent,

v.

Robert L. SCHONEMAN and Alice F. Schoneman, Defendants-Appellants,

FIRST INTERSTATE BANK OF WISCONSIN-SHEBOYGAN NORTH, Defendant.

Court of Appeals

*No. 91-0333. Submitted on briefs September 4, 1991.—Decided October 23, 1991.*

(Also reported in 477 N.W.2d 77.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Robert C. Hahn* of *Holden & Hahn, S.C.* of Sheboygan.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Dean M. Dietrich* of *Darrow & Dietrich, S.C.* of Sheboygan.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J. Robert and Alice Schoneman (Robert) appeal from a foreclosure judgment entered in favor of Robert's former wife Patricia Day (Patricia).[1] The property at issue is the residence which Robert and Patricia jointly owned during their marriage. Patricia acquired a lien against the property pursuant to the divorce judgment. The question on appeal is whether Robert may avoid Patricia's lien because of his postdivorce discharge in bankruptcy. We conclude that

---

[1] Patricia Day died during the pendency of this action. Pursuant to sec. 803.10, Stats., the trial court ordered Susan Klemme, special administrator for Patricia's estate, substituted for Patricia. Thus, Klemme in her capacity as special administrator of Patricia's estate, continues this action on behalf of the estate. For convenience, however, we refer to the plaintiff-respondent in this appeal as "Patricia."

Robert may not avoid Patricia's lien. We affirm the judgment of foreclosure.

## HISTORY

The facts are undisputed. Robert and Patricia were granted a judgment of divorce on October 8, 1981. The divorce judgment incorporated their stipulation concerning, *inter alia,* the division of their property. By the terms of the stipulation, Robert was awarded "all right, title and interest" in the couple's former residence. Patricia was divested of all right, title and interest in the residence, subject to a cash settlement of $5800 which remained a lien against the property until paid off under a prescribed payment plan.[2]

[2]The stipulation provided that:

[Robert] shall be awarded all right, title and interest in the real property located at 2716 Michigan Avenue, Sheboygan, Wisconsin, [legal description omitted] and [Patricia] shall be divested of all right, title and interest therein subject to the following cash settlement which shall remain as a lien against said property until paid:

[Robert] shall pay [Patricia] the sum of Five Thousand Eight Hundred ($5,800.00) Dollars payable in the following manner: $1,500.00 to be paid within thirty (30) days of the divorce hearing; $1,500.00 bearing interest at 12% per annum from the date of the divorce hearing to be paid nine (9) months from the date of the hearing; $1,500.00 bearing interest at 12% per annum from the date of the divorce hearing to be paid twelve (12) months from the date of the hearing; $1,300.00 bearing interest at 12% per annum from the date of the divorce hearing to be paid fifteen (15) months from the date of the divorce hearing. Upon payment of the final installment [Patricia] shall execute such documents of title as necessary to terminate her lien against the real estate.

The stipulation was amended orally at the divorce hearing. The transcript of that hearing is not part of the appellate record. We note that any amendments to the text quoted above are not germane to the issue on appeal.

Robert paid $1500 on the debt, but defaulted on the remainder. On July 15, 1982, Robert filed a voluntary petition in bankruptcy, listing the lien debt owed Patricia pursuant to the divorce judgment. On November 4, 1982, Robert received a "Discharge of Debtor" from the bankruptcy court releasing him from all dischargeable debts.

Armed with this discharge, Robert applied to the family court, pursuant to sec. 806.19(4), Stats., for satisfaction of his debt owed to Patricia.[3] The court ruled that Robert's bankruptcy should not undermine the intended property division.[4] The court, therefore, modified the divorce judgment to restore Robert and Patricia as joint tenants of the property and then dismissed Robert's application for satisfaction of his debt to Patricia.

Robert appealed this decision of the family court to the court of appeals. We held in an unpublished decision that the court's ruling represented an impermissible revision or modification of the final property division of a divorce judgment contrary to the express terms of sec. 767.32, Stats.[5] In that decision, however, we made no

---

[3]Section 806.19(4), Stats., provides in part:

(a) Any person who has secured a discharge in bankruptcy that renders void one or more judgments . . . may submit an application for an order of satisfaction of the judgments and an attached order of satisfaction to the clerk of the court in which the judgments rendered void by discharge were entered.

. . .

(d) Upon receipt of a completed application, the clerk shall submit the attached proposed order for signature by a judge after which the clerk shall satisfy of record each judgment described in the application.

[4]This ruling was not made by the circuit judge assigned to this foreclosure action.

[5]*Schoneman v. Schoneman,* No. 83-2289, unpublished slip op. (Wis. Ct. App. Aug. 8, 1984).

determination regarding Patricia's other possible avenues of relief in light of Robert's discharge in bankruptcy.

On December 21, 1988, Patricia commenced the foreclosure action which is the subject of this appeal. Patricia sought a judicial sale of the property and application of the proceeds to the debt. Robert countered that Patricia's lien was premised upon a debt which he had discharged in bankruptcy. Thus, Robert argued that he was entitled to avoid the lien granted to Patricia in the divorce judgment.

After taking evidence and hearing arguments, the trial court ruled that Patricia's interest in the property was a mortgage lien which Robert could not avoid. The court based its ruling on *Wozniak v. Wozniak,* 121 Wis. 2d 330, 359 N.W.2d 147 (1984), in which the supreme court determined that a lien against real estate granted as part of a divorce judgment was a mortgage lien. The court awarded Patricia a judgment of foreclosure.[6] Robert appeals.

## ANALYSIS

### *Farrey v. Sanderfoot*

Robert argues that the United States Supreme Court's recent decision in *Farrey v. Sanderfoot,* 500 U.S. —, 111 S. Ct. 1825 (1991), supports his claim that he may avoid Patricia's lien. We disagree.

---

[6]The trial court also ruled that the lien fit the definition of a mortgage found in sec. 851.15, Stats. Robert contends this, too, was error. Because we affirm on the basis of *Wozniak v. Wozniak,* 121 Wis. 2d 330, 359 N.W.2d 147 (1984), we do not address whether Patricia's lien qualifies as a mortgage under the statute.

*Sanderfoot* grew out of a Wisconsin divorce case. The facts are similar to those here. A divorce judgment directed Gregory Sanderfoot to pay his former wife, Jeanne Farrey, a sum of money to balance an equal property division. To insure payment of the balancing debt, the judgment granted Farrey a lien against Sanderfoot's real property. Sanderfoot then filed for bankruptcy, listing the debt to Farrey.

In addition to seeking the discharge of his debt to Farrey, Sanderfoot also sought to avoid Farrey's lien, invoking 11 U.S.C. sec. 522(f)(1) of the Bankruptcy Code, which provides in part:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1)   a judicial lien . . .. [Emphasis added.]

The bankruptcy court rejected Sanderfoot's application for discharge of the debt and to avoid the lien. The court reasoned that the lien could not be avoided because it protected Farrey's preexisting interest in the marital property. *Sanderfoot,* 500 U.S. at —, 111 S. Ct. at 1828. However, the district court reversed this ruling. *In re Sanderfoot,* 92 Bankr. 802 (Bankr. E.D. Wis. 1988). A divided panel of the court of appeals affirmed the district court. *In re Sanderfoot,* 899 F.2d 598 (7th Cir. 1990). The appellate court reasoned that Farrey's interest in her preexisting property was extinguished by the divorce proceedings. Thus, Farrey's lien attached to Sanderfoot's—not Farrey's—interest. Such a lien, the court concluded, was avoidable under sec. 522(f)(1).

The United States Supreme Court reversed, concluding that "unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of sec. 522(f)(1)." *Sanderfoot,* 500 U.S. at —, 111 S.Ct. at 1829 (emphasis added). The Supreme Court further observed that whether a debtor "possessed an interest to which the lien fixed, before it fixed, is a question of state law." *Id.* at —, 111 S. Ct. at 1830. The *Sanderfoot* Court, however, was not required to delve into Wisconsin law on this point since Sanderfoot had conceded that the effect of the Wisconsin divorce judgment was to extinguish the parties' prior interests in the property and to create a new interest in Sanderfoot's favor. From this concession the Supreme Court concluded that "Sanderfoot must lose" because Farrey's judicial lien encumbered Sanderfoot's "wholly new fee simple interest" and, thus, Sanderfoot could not avoid the lien under sec. 522(f)(1). *Sanderfoot,* 500 U.S. at —, 111 S. Ct. at 1830.

In this case, Robert attempts to move us to the question left open in *Sanderfoot*—whether under Wisconsin law a judicial lien granted by a divorce judgment operates against a preexisting or a newly created interest in the debtor's property. Robert argues that Patricia's lien operates against his preexisting interest in the property. Thus, under *Sanderfoot* and sec. 522(f)(1) of the Bankruptcy Code, Robert reasons that he may avoid Patricia's lien.

However, before we can accept Robert's invitation to enter into this uncharted area, we first must examine whether this incursion is even necessary. As we have noted above, *Sanderfoot* was premised upon: (1) Sanderfoot's concession that the divorce judgment extinguished the parties' previous interests in the prop-

erty and created a wholly new interest in Sanderfoot; and (2) the fact that sec. 522(f)(1) of the Bankruptcy Code concerning the avoidance of *judicial* liens governed the question. Robert's appeal in this case is similarly premised.

We first must address whether these premises are valid in this case. We conclude they are not. Here, Patricia argues that she is the recipient of a *mortgage* lien, not a judicial lien. Section 522(f)(1) of the Bankruptcy Code speaks only to the avoidance of *judicial* liens. It does not apply to *mortgage* liens. Thus, we first must answer whether Patricia holds a *mortgage* lien under *Wozniak.* If so, *Sanderfoot* becomes irrelevant to this case. If not, we then must answer the question left open under *Sanderfoot.* We now turn to *Wozniak.*

### *Wozniak v. Wozniak*

Opal Wozniak owned a parcel of real estate in joint tenancy with her grandson. Later, Opal and her husband, William, divorced. The divorce judgment awarded Opal her interest in the property subject to a lien in William's favor to secure the payment of a cash settlement from Opal to William. *Wozniak,* 121 Wis. 2d at 332, 359 N.W.2d at 148. When Opal died before redeeming the property by payment of the debt, William commenced a foreclosure action. *Id.* at 332–33, 359 N.W.2d at 148.

The grandson, Opal's surviving joint tenant, intervened in the foreclosure proceeding, asserting that William's lien was a judicial lien which did not survive the death of the debtor pursuant to sec. 700.24, Stats. *Wozniak,* 121 Wis. 2d at 333–34, 359 N.W.2d at 148–49. The supreme court disagreed, concluding that the divorce

judgment had the "characteristics of a mortgage rather than a judgment lien." *Id.* at 337, 359 N.W.2d at 150.

One such characteristic, according to the supreme court, is that a mortgage serves as security for a particular piece of property, while a judgment lien ordinarily is not a lien on any specific real estate of the judgment debtor but is a general lien on all of the debtor's real property. *Id.* at 334, 359 N.W.2d at 149. The court also observed that a transfer of property as security, regardless of the form thereof, denotes a mortgage. *Id.* at 336, 359 N.W.2d at 150.

The supreme court concluded that William's interest was a mortgage lien because, even though the term "mortgage" was not used in the divorce judgment, William was awarded a lien on a specific parcel of real estate as security for the payment of a sum of money, bearing interest at a specific rate, and due on a specific date. *Id.* at 337, 359 N.W.2d at 150. The court additionally observed that "[i]t is also *helpful* to consider the means which the trial court provided for [William] Wozniak to enforce the payment of the sum awarded to him." *Id.* (emphasis added). Since the trial court contemplated the enforcement of William's secured interest by means of a foreclosure action, the supreme court concluded that this represented "persuasive evidence that the trial court awarded a mortgage interest in the property." *Id.*

## *Wozniak* as Applied to This Case

The lien here contains no "foreclosure" language. However, Patricia's lien as expressed in the divorce judgment still contains all the "mortgage" ingredients present in *Wozniak:* (1) Patricia's interest is expressed as a lien; (2) the lien attaches to a particular piece of property; (3) the lien is to guarantee payment of a sum of

money; (4) the debt earns interest; and (5) the debt is due on a particular date.

We do not deem the absence of express "foreclosure" language as fatal to Patricia's mortgage lien claim under *Wozniak*. The *Wozniak* court deemed such language "helpful." However, nowhere does *Wozniak* deem such language essential or conclusive on the question.

Rather, the most compelling and controlling statement of *Wozniak* is:

> Whatever be the form of the transaction, *if intended as a security for money, it is a mortgage and the right of redemption attaches to it . . .. The purpose of the instrument is the controlling feature under all circumstances. If that is security . . . the instrument is treated as a mortgage and nothing else.*

*Id.* at 336, 359 N.W.2d at 150 (citations omitted; emphasis added).

Here, regardless of the presence or absence of formal mortgage characteristics, it is clear that the purpose of Patricia's lien was security for the future payment of Robert's balancing payment of the property division. It is this aspect of *Wozniak* that truly controls this case.

Robert further argues that the *Wozniak* court created a formal conveyance requirement before a mortgage situation may exist. According to Robert, the precedents cited by the supreme court in *Wozniak* evidence actual transfers or conveyances of *some type of interest* by the mortgagor to the mortgagee. Regardless, we observe that the facts of *Wozniak* reveal no such formal instrument of conveyance. Instead, the supreme court construed the *Wozniak* judgment of divorce to create a mortgage lien—the same claim Patricia makes here.

■ Thus, we reject Robert's argument that *Wozniak* requires a formal instrument of conveyance before a mortgage lien may exist. Instead, we echo our earlier observation—while the characteristics of the lien are relevant, it is the purpose of the lien which ultimately must control on the question of whether the lien is judicial or mortgage. The divorce judgment in this case clearly reveals that the purpose of the lien granted to Patricia was to provide her the necessary security in the event of Robert's default on the debt.

■ Finally, Robert contends that if we interpret *Wozniak* as we have, we declare every divorce judgment lien a mortgage lien. Again, Robert's reading of *Wozniak* is at once too broad and too narrow. The central teaching of *Wozniak* is that a lien granted in the context of a judgment of divorce will be deemed a mortgage by operation of law, where the particular facts of the case indicate that the court intended that the lien attach to a specific parcel of real estate for the purpose of securing a debt whose satisfaction represents a division of the marital estate. *See id.* at 335–38, 359 N.W.2d at 149–50. This exercise will continue to require a case-by-case analysis. While it may in most cases result in a declaration of a mortgage lien, neither *Wozniak* nor this case create an ironclad rule.[7]

---

[7] Robert also argues that Patricia's lien cannot be a mortgage because Patricia herself did not realize or believe that the lien was a mortgage until consulting with attorneys several years after the divorce. The outcome of this appeal does not rest upon the evaluation of a layperson; it is the intent of the trial court in creating the lien which controls. *See Wozniak,* 121 Wis. 2d at 336, 359 N.W.2d at 150.

## CONCLUSION

Although *Sanderfoot* represents a statement of the United States Supreme Court and springs from a Wisconsin divorce, neither the parties nor the Supreme Court factored *Wozniak* into their discussions. In this case, *Wozniak* requires that we construe Patricia's lien as a mortgage lien, not a judicial lien. *Sanderfoot,* as a judicial lien case, thus does not control. The questions left open by *Sanderfoot* must await another day.

We conclude by echoing the supreme court's caution in *Wozniak:* "To avoid the problem created by the judgment in this case, trial courts should specify in the judgment of divorce the type of lien awarded." *Id.* at 337–38, 359 N.W.2d at 150. We extend this same caution to counsel who draft such judgments.

*By the Court.*—Judgment affirmed.