Eugene J. WEBER and Ann M. Weber, Plaintiffs-Respondents-Cross Appellants,

v.

Jerold J. WEBER and Ruth C. Weber, Defendants-Appellants-Cross Respondents-Petitioners.

Supreme Court

*No. 90–2327. Oral argument April 27, 1993.—Decided June 23, 1993.*

(Also reported in 501 N.W.2d 413.)

1085

For the defendants-appellants-cross respondents-petitioners there were briefs by *Mary M. Laufenberg (Langenhahn)* and *Drach Law Firm,* Wausau and oral argument by *Jeffery J. Drach.*

For the plaintiffs-respondents-cross appellants there was a brief by *Edward F. Zappen* and *Zappen & Meissner,* Wausau and oral argument by *Edward F. Zappen.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals, 169 Wis. 2d 538, 485 N.W.2d 447 (Ct. App. 1992), affirming a decision of the circuit court, James M. Mason, Judge, which denied the defendants' motion for relief from a Judgment of Foreclosure under sec. 806.07(1)(d), Stats.[1] The defendants, Ruth and Jerold Weber, argued that Ruth's

---

[1] Wis. Stats., § 806.07(1)(d) provides:

failure to sign the mortgages and notes given by her husband, Jerold, to his parents, plaintiffs Eugene and Ann Weber, rendered the mortgages void under the homestead requirement of the statute of frauds, sec. 706.02(1)(f), Stats.[2] The circuit court held, and the court of appeals affirmed, that Jerold and Ruth Weber waived their right to assert the defense of statute of frauds because they failed to raise the defense until after the foreclosure judgment had been entered against them.

The initial question before this court is whether the signature requirement of the homestead provision of the statute of frauds can be waived by failure to plead it as an affirmative defense in a mortgage foreclosure action. We hold that prohibiting defendants from raising the defense of statute of frauds during a post-judgment motion on a homestead mortgage foreclosure violates the substantive protection afforded homestead property pursuant to sec. 706.02(1)(f) and evidenced by this state's long-standing policy favoring homestead rights over other property interests. We therefore reverse the deci-

---

**Relief from judgment or order. (1)** On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons . . .

(d)   The judgment is void. . . .

[2] Wis. Stats., § 706.02 provides in part:

**Formal requisites. (1)** Transactions under s. 706.01(1) [all conveyances involving mortgages] shall not be valid unless evidenced by a conveyance which:

. . ..

(f)   Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) [homestead defined] except conveyances between spouses, but on a purchase money mortgage pledging that property as security only the purchaser need sign the mortgage . . .

1088

sion of the court of appeals and remand the case for further proceedings.

For several years prior to 1979, Jerold Weber and his wife Ruth worked and lived on the family farm owned by his parents, Eugene and Ann Weber, at a wage of $10 per week plus basic necessities. On or around January 1, 1979, the elder Webers orally conveyed the farm to Jerold and Ruth with the understanding that the younger couple would run the farm, pay all the bills and keep all the profits in return for a monthly payment of about $3,000 per month to Eugene and Ann. As evidence of the parties' intentions, the elder Webers presented the farm check book to Jerold and Ruth.

The parties' performance on this agreement continued through May, 1980, when Eugene, Ann and Jerold entered into a written agreement consisting of (1) an offer to purchase, (2) a mortgage and note for $300,000, (3) another mortgage and note for $150,000, and (4) a deed from the parents to the son. These documents, drafted by the parents' attorney, Patrick Juneau, were dated January 1, 1979, although in fact they were signed on May 30, 1980. Ruth Weber did not attend the meetings at which these arrangements were made, nor did she sign any of these documents.

On July 25, 1988, Eugene and Ann filed a complaint in the circuit court for Wood county demanding Judgment of Foreclosure against Jerold and Ruth.[3] Attorney Drach, a former partner in Juneau's firm, filed an answer on behalf of Jerold and Ruth, but failed to plead as an affirmative defense that Ruth had not signed the notes and mortgages. Subsequently, Eugene and Ann moved the court for summary judgment and on February 20, 1989, the circuit court granted a default summary judg-

---

[3] Ruth was joined as a party because the court recognized that as Jerold's wife she "may claim an interest in said property."

ment against Jerold and Ruth and ordered the sale of the mortgaged property subject to a one year period of redemption. Attorney Drach approved the judgment as to form and content and the defendants did not appeal.

Approximately eleven months after judgment had been entered, and one month before the period of redemption expired, the younger Webers moved to amend the judgment to reflect Ruth's homestead interest. Subsequently, Jerold and Ruth also moved for relief from the judgment under sec. 806.07 on grounds that it was void because the mortgages were not valid without Ruth's signature.[4] The circuit court denied the motions, stating the statute of frauds defense could not be raised after the court had entered judgment. In a written decision, the circuit court distinguished the instant case from *State Bank of Drummond v. Christophersen,* 93 Wis. 2d 148, 286 N.W.2d 547 (1980), in which a husband successfully petitioned for relief from a Judgment of Foreclosure after discovering that his wife had executed a mortgage on the homestead by forging his signature. Whereas the *State Bank of Drummond* court vacated the judgment because the signature requirement of 706.02(1)(f) had not been satisfied, the circuit court here concluded that the revised procedural statutes requires the statute of frauds to be pleaded as an affirmative defense.

The court of appeals affirmed, relying on the language of sec. 802.02(3), Stats., that "any matter consti-

---

[4] In response to these two motions, Eugene Weber's attorney moved to have Attorney Drach dismissed from the action because of an apparent conflict of interest. The circuit court rejected Eugene's motion stating that he had waived the right to objection to Attorney Drach's presence by not raising it earlier. Eugene and Ann Weber did not appeal the court's ruling and we therefore do not consider the matter further.

tuting an avoidance or affirmative defense including but not limited to . . . the statute of frauds," must be pleaded affirmatively to give fair notice to the plaintiff and trial court. The court of appeals stated that while a conveyance of homestead property not signed "by or on behalf of" both spouses is void, "the defense that a spouse did not sign the conveyance by which the spouse's homestead interest was conveyed is personal and may be waived." *Weber,* 169 Wis. 2d at 544. Because Jerold and Ruth had waived the statute of frauds defense by not pleading it, the court held that the mortgages were not void and the Judgment of Foreclosure stood.

We must decide whether the statute of frauds is a spouse's personal right that can be waived in respect to a mortgage held void under sec. 706.02(1)(f) if the statute of frauds is not pleaded affirmatively. Statutory interpretation requires legal determinations which we make without deference to the decision of the court of appeals or the circuit court. Reaching a final resolution of this dispute, however, requires more than statutory interpretation; it requires additional fact finding. Accordingly, we remand the case and direct the circuit court to determine (1) the nature of the original oral conveyance, and (2) whether the parties successfully satisfied or took the conveyance out of the statute of frauds through part performance. If the court concludes from these findings that Ruth and Jerold did secure an equitable interest in the property prior to signing the mortgages, the court must then determine the extent of the younger Weber's homestead interest in the property.[5]

---

[5] The circuit court and the parties all seemingly agree that Ruth and Jerold have established a homestead interest in the disputed real property. Accordingly, we need not consider the establishment of the interest and assume for purposes of this

In respect to the threshold question whether Jerold and Ruth may bring a motion for post-judgment relief on the ground that the mortgages were void under the statute of frauds, both the circuit court and the court of appeals rejected Jerold and Ruth's motion on the basis of sec. 802.02(3), Stats.,[6] which states:

> AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following . . . statute of frauds . . ..

According to both courts, the statute expressly requires parties to plead the statute of frauds as an affirmative defense in the circuit court. Each court took the position that because Jerold and Ruth failed to comply with sec. 802.02(3) they waived the right to question the legal validity of the mortgages in a motion seeking post-judgment relief.

Both the circuit court and the court of appeals rely upon general statements of law in respect to the pleading of the statute of frauds. The circuit court decision quotes 73 *Am. Jur. 2d,* Statute of Frauds for the proposition that "[i]t is generally recognized that a defendant who, when sued upon an oral contract, desires to invoke the protection of the statute of frauds must set up the statute by some proper pleading . . .." 73 *Am. Jur. 2d,* sec.

---

decision that such an interest exists. For a survey of the rules relating to the establishment of a homestead in Wisconsin *see* Kreitler, *Establishment and Abandonment of a Wisconsin Homestead,* 1973 Wis. L. Rev. 876. *See also Scofield v. Hopkins,* 61 Wis. 370, 21 N.W. 259 (1884).

[6] The Wisconsin Rules of Civil Procedure, including Chapter 802 of the statutes, were adopted by the supreme court on February 17, 1975. *See* 67 Wis. 2d 614.

594 at 231. Similarly, the court of appeals notes that federal courts uniformly interpret Rule 8(c) of the Federal Rules of Civil Procedure, from which sec. 802.02(3) is derived, to require "that a defense such as the statute of frauds be pleaded affirmatively to give fair notice to the plaintiff and trial court." *Weber,* 169 Wis. 2d at 543 *(citing United McGill Corp. v. Gerngross Corp.,* 689 F.2d 52, 54 (3d Cir. 1982)).[7]

We do not disagree with these statements as applied to the statute of frauds generally. This court has itself relied on commentators such as Corbin and Williston for the proposition that "[i]t is black-letter law that the defense of the statute of frauds is waived if not raised in the trial court." *Hine v. Vilter,* 88 Wis. 2d 645, 650, 277 N.W.2d 772 (1979). We interpret the procedural dictate of sec. 802.02(3) merely to codify this well-established rule of waiver by requiring parties to plead the statute of frauds defense affirmatively. We do not believe, however, that this rule applies where a homestead interest is at stake.

We note that requiring the statute of frauds to be pleaded affirmatively is consistent with the statutory language of sec. 706.02 which states that unless the statute's requirements are satisfied the disputed conveyance *"shall not be valid."* If a conveyance of land lacks any one of the statutory requirements, the entire agreement is invalidated and the parties must rely on equity to

---

[7] Although it is certainly appropriate for state courts to consider the federal rules of civil procedure for guidance in construing our derivative state statutes, we wish to underscore the fact that the effect we give to sec. 802.02(3) is a matter of state law and supersedes the federal courts' interpretation of Rule 8(c).

enforce the contract. *See generally* sec. 706.04.[8] Thus, the pleading requirements set forth in sec. 802.02(3) provide contracting parties the finality and notice necessary to shield themselves from the hardships wrought by such a defense. As stated in *State Bank of Drummond*, " '[t]he rule [of the statute of frauds] requires reasonable caution and prudence in the transaction of business, and is deeply imbedded in our jurisprudence. . . . better that men should be held to the consequences of their own culpable carelessness, than that courts of equity should undertake to relieve therefrom.' " *State Bank of Drummond*, 93 Wis. 2d at 161 *(quoting Conner v. Welch*, 51 Wis. 431, 8 N.W. 260 (1881)).

The procedural efficacy of sec. 802.02(3) notwithstanding, we nonetheless reject the reasoning of the circuit court and the court of appeals as applied to the homestead signature requirement. Unlike sec. 706.02's descriptive requirements, *e.g.*, identity of land or identity of parties, the homestead signature requirement protects against the fraudulent dispossession of a legislatively protected interest—an interest that is rooted in the state constitution, secured by statute and reinforced by more than 100 years of Wisconsin case law. *See generally C. Steinmetz, Judgment Lien Claimants' Rights Against Homestead Exemption Interests: An Equitable Distribution of Mortgage Foreclosure Sale Proceeds,* 1981 Wis. L. Rev. 697 [hereinafter *"Homestead Exemption Interests"]; Crow, The Wisconsin Homestead*

---

[8] Wis. Stats., § 706.04 provides in part:

**Equitable relief.** A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity . . ..

*Exemption Law,* 20 Marq. L. Rev. 1 (1935).[9] In light of the unique public policy favoring Wisconsin homesteads over other property interests, we conclude that sec. 706.02(1)(f) preserves a constitutionally derived substantive right that supersedes sec. 802.02(3)'s pleading requirements.

Evidence of the legislative preference for homestead interests rests in the statutes themselves. In addition to the special signature requirements of sec. 706.02(1)(f), the state legislature has enacted legislation classifying homestead property under the marital property act (sec. 766.605), regulating the sale of homesteads during mortgage foreclosures (sec. 846.11), exempting homesteads from judgment liens (sec. 815.20), and setting homesteads apart after levying fines (sec. 815.21). All of these statutory provisions demonstrate the legislatively conferred priority of homestead rights over other statutory rights.

Further evidence of the unique status of homestead property can be found in early judicial statements relat-

---

[9] The history of the homestead exemption can be traced back to the adoption in 1848 of art. I, § 17 of the state constitution which provides:

> **Exemption of property of debtors. SECTION 17.** The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted.

*See Homestead Exemption Interests,* 1981 Wis. L. Rev. at 704 n.46. Consonant with the legislative enactments, the state judiciary has exhibited equal concern for furthering the public policies that underlie the homestead exemption. *Id.* at 705–06 n.52 *(citing Scofield v. Hopkins,* 61 Wis. 370, 21 N.W. 259 (1884); *Schwitzke v. American Nat'l Bank,* 242 Wis. 521, 8 N.W.2d 303 (1943); *Warsco v. Oshkosh Sav. and Trust Co.,* 190 Wis. 87, 208 N.W. 886 (1926)).

ing to the homestead signature requirement itself. In discussing one version of the homestead statute, for example, this court stated:

> The policy of the statute . . . is not to give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from insisting upon . . .. If it should be held that the homestead right is a mere privilege which the wife may waive, or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute.

*Cumps v. Kiyo,* 104 Wis. 656, 662, 80 N.W. 937 (1899). *See also Elfelt v. Cooper,* 168 Wis. 2d 1008, 1021, 485 N.W.2d 56 (1992) *(quoting Cumps).* Consistent with this statement of policy, this court in *Glinski v. Sheldon,* concluded that "the legislature, by the enactment of sec. 706.04, did not intend to defeat the raising of the homestead defense in an action based upon the real estate contract" and consequently exempted the homestead signature requirement from the scope of sec. 706.04. *Glinski,* 88 Wis. 2d 509, 522, 276 N.W.2d 815 (1979). *See also State Bank of Drummond,* 93 Wis. 2d at 157.

Contrary to the above mentioned legislative and judicial protections historically afforded homestead interests, the decision of the court of appeals places the burden of affirmatively pleading the statute of frauds in respect to sec. 706.02(1)(f) on the person least likely to be aware of the violation—the person on whom the fraud has been perpetrated, the non-signing spouse. Rather than advance state policy, the decision of the court of appeals undermines the very reason for enacting safeguards such as the dual signature requirement and in effect will "evade and nullify the statute." *Cumps,* 104 Wis. at 662. Accordingly, we reject the reasoning of the

court of appeals and instead emphasize the long-standing rule that "a wife . . . shall be conclusively presumed to have exercised [her absolute veto upon the husband's power to alienate the homestead] till the contrary appears by her voluntary act of joining with him and conveying such homestead, evidenced by her signature to the conveyance." *Cumps*, 104 Wis. at 661. *See also Wangen v. Leum*, 46 Wis. 2d 60, 174 N.W.2d 266 (1970) (citing cases).

Insofar as sec. 706.02(1)(f) confers a substantive right on the defendants, we conclude that the pleading requirement set forth in sec. 802.02(3) is inapplicable to the instant dispute. A court created rule of civil procedure, as is sec. 802.02(3), cannot be applied in derogation of a substantive, legislatively protected right. Accordingly, we hold that the court was wrong to subject sec. 706.02(1)(f) to the same affirmative pleading rules governing the statute of frauds generally. In contrast to the descriptive requirements listed in sec. 706.02, the homestead signature requirement must be waived affirmatively by the spouse through the actual signing of the mortgage.

Because we conclude that the court of appeals wrongly denied Jerold and Ruth Weber the opportunity to move for relief from the circuit court's default Judgment of Foreclosure on their mortgages, we must decide whether the mortgages are void as the defendants assert. The legislature has provided only one exception to the signature requirement of sec. 706.02(1)(f), namely purchase money mortgages. If the mortgages can be characterized as purchase money mortgages then Ruth's signature was not required for a valid conveyance.

Section 708.09, Stats., defines a purchase money mortgage as a mortgage "given as part of the transaction

of purchase to the vendor of real estate for all or a part of the purchase money or to a 3rd person who advances all or part of the purchase money." Eugene and Ann Weber contend that the mortgage documents signed and executed on May 30, 1980, constitute a purchase money mortgage and are therefore exempt from sec. 706.02(1)(f)'s signature requirements. The senior Webers point to the backdating of the mortgage documents as evidence of the fact that the mortgage note was meant to apply to the original transaction of purchase. To the contrary, Jerold and Ruth maintain that the only conveyance of property occurred eighteen months earlier on January 1, 1979, when the parties entered into the oral agreement as to the operation and management of the farm.

According to Jerold and Ruth, the mortgage documents executed in May 1980, simply memorialized the parties' intentions at the time of the earlier transaction, and that intent was to grant them both a fee in the farm. Further, the younger Webers assert that their actions subsequent to January 1, 1979, were exclusively referable to the oral conveyance, i.e., monthly payments, operation of the farm, and payment of all debts and overhead expenses, and therefore constitute part performance on the oral transaction to satisfy the requirements of sec. 706.04, Stats., and take the conveyance out of the statute of frauds. If this is true, then the younger Webers secured a fee interest in the property prior to the signing of the mortgage documents in 1980, and the mortgages must therefore be something other than purchase money mortgages.

In order properly to classify the 1980 mortgage documents, one must first consider the intent of the 1979 transaction. Determining the parties' intentions when

they conveyed the farm and whether Ruth and Jerold's subsequent actions were sufficient to satisfy sec. 706.04(2), require fact findings that fall outside the scope of this court's authority. Without these facts we are unable to state conclusively that the mortgage was not a purchase money mortgage, which would render the Judgment of Foreclosure free from homestead encumbrance.[10] Accordingly, we remand the matter to the circuit court for additional fact finding.

We make explicit the relevant law. First, if both the parties' intentions in respect to the original transaction and Ruth and Jerold's part performance indicate that the mortgages are something other than purchase money mortgages then the circuit court must find them void as a matter of law under sec. 706.04(2) and consequently of no legal significance. Second, as parent's counsel has stated, if the Judgment of Foreclosure ultimately is vacated, the elder Webers may be able to secure a judgment and lien against Jerold and Ruth, which would be subject to the homestead exemption provided for in sec. 815.20, Stats. In the event that the plaintiffs elect the latter course, the circuit court must ascertain the obliga-

---

[10] Wis. Stats., § 815.20 provides in relevant part:

(1) An exempt homestead as defined in s.990.01(14) selected by a resident owner and occupied by him or her *shall be exempt from execution,* from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, *except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided.* . . . (emphasis added).

In the instant dispute, the classification of the mortgages is relevant only insofar as it determines the application of the homestead exemption. Homesteads are statutorily exempt from judgment liens but not from mortgage foreclosures. Section 815.20, Stats. Accordingly, unless Jerold and Ruth are successful in having a court void the 1980 mortgage documents they lose the statutory protection afforded homestead property.

tion, if any, of Ruth and Jerold to the elder Webers and the extent of Ruth and Jerold's homestead interest to be exempt from the judgment.

*By the Court.*—Decision of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.