The EQUITABLE BANK, S.S.B., Plaintiff,

v.

Charles CHABRON, a/k/a Charles K. Chabron, and Eva Chabron, a/k/a Eva I. Chabron, Defendants-Appellants,

James C. MCDONALD and Rita McDonald, Defendants-Respondents,†

STILLBROOK HOLLOW CONDOMINIUM OWNERS ASSOCIATION, INC., Defendant.

Court of Appeals

*No. 99–2639. Submitted on briefs July 12, 2000.—Decided August 23, 2000.*

2000 WI App 210

(Also reported in 618 N.W.2d 262.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Leonard G. Leverson* of *Kravit, Gass, Hovel & Leitner, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Alan H. Deutch* of *Deutch & Weiss*, Glendale.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. · ANDERSON, J. This appeal concerns a dispute over the surplus funds resulting from a mortgage foreclosure sale of a condominium property. Charles and Eva Chabron appeal from an order determining that James C. and Rita McDonald were entitled to the

entire surplus because of an in-court, oral stipulation made in a companion case. The Chabrons contend that (1) the stipulation was not a valid mortgage under WIS. STAT. § 706.02 (1997–98),[1] and (2) the homestead exemption in WIS. STAT. § 815.20(1) should be applied to the surplus, entitling them to $40,000 from the surplus proceeds. We determine that the stipulation satisfied the requirements for a valid mortgage and affirm the circuit court's decision in that regard. However, because the stipulation was a conveyance without the requisite signatures, we reverse the court's conclusion that the Chabrons were not entitled to their homestead exemption. The Chabrons are entitled to the $40,000 homestead exemption and this amount should be deducted from the surplus resulting from the property's sale.

¶ 2. The present case is not the first appeal resulting from the Chabrons' failed condominium project, Stillbrook Hollow Condominiums (Stillbrook Hollow). The Chabrons decided to develop their property into five condominiums. The McDonalds entered into a contract with the Chabrons for one of the condominiums. Before their unit was completed, the McDonalds rescinded the contract and demanded a refund of their $225,000 payment. The Chabrons did not refund the McDonalds' money, and the McDonalds brought suit against them for breach of contract. After the lawsuit was filed, a lis pendens was filed against the property preventing its sale.

¶ 3. That lawsuit went to trial. During the trial, the parties' attorneys made an in-court, oral agreement to terms that resolved the case. This oral agreement was never reduced to writing. Later, the parties dis-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

agreed about what the agreement had been. The Chabrons moved the court for relief from the agreement. A hearing was held, and the court denied the Chabrons' motion. In reaching its decision, the court determined that the parties' in-court agreement was a stipulation, and it also resolved what the parties agreed to in that stipulation.[2] Continuing to argue that they were not bound by the stipulation, the Chabrons appealed the circuit court's decision to this court; we summarily affirmed. *See McDonald v. Chabron*, No. 98–1882, unpublished slip op. (Wis. Ct. App. Apr. 14, 1999).

¶ 4. In the meantime, the Chabrons were unable to make their mortgage payments. The Equitable Bank, S.S.B., (Equitable) commenced a foreclosure action against them. The McDonalds filed suit against Equitable, asserting that the stipulation gave them a lien with a priority interest in the property. Summary judgment was entered in favor of Equitable. Noting

---

[2] In relevant parts, the court found that the McDonalds and the Chabrons consented to the following stipulation:

A. The defendants, CHARLES K. CHABRON, EVA I. CHABRON and CH BUILDERS, LLC., (Chabrons) agree jointly and severally to pay the plaintiffs, JAMES C. MCDONALD and RITA T. MCDONALD (McDonalds) the sum of $300,000 . . . on or before June 1, 1997. . . . That upon the full and complete payment of the amount . . . owing, the interest of McDonalds in the property . . . will be extinguished. Time is of the essence as to all dates.  ·

B. That the amount owing to McDonalds will be and is hereby secured by a recording on the entire condominium property, which is . . . known to be . . . Stillbrook Hollow Condominiums. . . .

. . . .

C. It is stipulated and agreed that the court will enter an order that McDonalds do and did have an interest in the property . . . known as Stillbrook Hollow Condominiums, that said interest is an interest superior to any interest of the Chabrons, that said interest was created and exists both in law and equity and by operation of Wisconsin Statutes Section 779.02(5).

that Equitable did have a priority interest in the property, we affirmed the judgment on appeal. *See Equitable Bank, S.S.B. v. McDonald,* No. 98–3620, unpublished slip op. (Wis. Ct. App. Nov. 3, 1999).

¶ 5.   Before their property was sold, the Chabrons received court recognition that one of the condominium units was their homestead. As such, the Chabrons continued to live in their unit of Stillbrook Hollow during the six-month redemption period.

¶ 6.   The Chabrons were unable to reclaim the property. The condominiums were foreclosed and sold at a sheriff's sale. At the sale, the McDonalds were the highest bidders, bidding $550,000. From the sale of the property, Equitable was paid $417,503.13 to settle the Chabrons' mortgage note. That left a surplus of $132,496.87. The McDonalds and the Chabrons both asserted rights to the surplus. The Chabrons argued that they had a $40,000 homestead exemption that should be taken from the surplus. The McDonalds contended that the stipulation between the parties was to be construed as a mortgage, to which the homestead exemption does not apply. The dispute was brought before the court. The court agreed with the McDonalds and concluded that the Chabrons were not entitled to the homestead exemption. The Chabrons appeal.

■

¶ 7.   On appeal, the Chabrons argue that the circuit court erred by concluding that the parties' stipulation was a valid mortgage trumping their entitlement to a $40,000 homestead exemption from the surplus funds after the condominiums were sold. They dispute that the stipulation constituted a mortgage only insofar as it determines if the homestead exemption applies. Homesteads are statutorily exempt from

judgment liens but not from mortgage foreclosures.[3] Accordingly, unless the Chabrons successfully demonstrate that the stipulation is not a valid mortgage, they lose the statutory protection afforded homestead property. Determining whether a stipulation conveying property satisfies the requirements for a mortgage involves statutory interpretation, a question of law that we review de novo. *See Weber v. Weber*, 176 Wis. 2d 1085, 1091, 501 N.W.2d 413 (1993).

¶ 8. WISCONSIN STAT. § 706.02 details the requirements for a conveyance of property. One of these requirements is that the conveyance must be signed by all the parties. *See* § 706.02(1)(e). The Chabrons contend that the stipulation cannot be regarded as a valid mortgage conveying their homestead because they never signed it. To resolve the Chabrons' argument, we will first consider if the stipulation was indeed a valid mortgage, and then we will evaluate whether the homestead exemption is applicable to their case.

¶ 9. Despite the Chabrons' arguments to the contrary, we conclude that the oral stipulation was a mortgage. We do so on the basis of *Klemme v. Schoneman*, 165 Wis. 2d 250, 477 N.W.2d 77 (Ct. App. 1991). In *Klemme*, we addressed whether a stipulation in a divorce action granted a mortgage interest in property that could not be discharged in bankruptcy. We rejected the argument that a mortgage required a for-

_____

[3] The homestead exemption is explained in WIS. STAT. § 815.20(1):

> An exempt homestead as defined in s. 990.01(14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. . . .

mal document and instead looked to see if the stipulation had the characteristics of a classic mortgage. *See id.* at 259–60. We noted that the *Klemme* stipulation contained the following "mortgage ingredients": (1) the conveyee's interest was expressed as a lien; (2) the lien attached to specific property; (3) the lien was a guarantee that a certain sum of money would be paid; (4) interest was earned on the debt; and (5) the debt had a due date. *See id.* at 258–59. We resolve that the stipulation in question contains these ingredients. We have previously held that the McDonalds possessed an equitable lien to one condominium unit and liens to the other units. *See Equitable Bank,* unpublished slip op. at ¶¶ 8, 9. A review of the stipulation also indicates that the lien was a guarantee for a certain sum of money, bearing interest at a specific rate and due on a specific date.

¶ 10. Moreover, we held in *Klemme* that the "most compelling and controlling" mortgage characteristic was:

> Whatever be the form of the transaction, *if intended as a security for money, it is a mortgage and the right of redemption attaches to it.... The purpose of the instrument is the controlling feature under all circumstances. If that is security ... the instrument is treated as a mortgage and nothing else.*

*Klemme,* 165 Wis. 2d at 259 (quoting *Wozniak v. Wozniak,* 121 Wis. 2d 330, 336, 359 N.W.2d 147 (1984)). The purpose of the McDonalds' lien is clear. It was the McDonalds' security to exact from the Chabrons their refund for the condominium investment. As in *Klemme,* we conclude that it is this aspect—the fact that the stipulation was a security—that truly controls

this case, regardless of the absence of other formal mortgage characteristics. We agree with the circuit court's resolution that the stipulation constituted a mortgage.

¶ 11. Supporting their assertion that they are entitled to the homestead exemption, the Chabrons rely primarily on *Weber*. In *Weber*, the issue under consideration was whether a mortgage was void as a homestead conveyance when it did not have the appropriate signatures. Acknowledging a long history of public policy favoring the homestead over other property interests, the *Weber* court found that the signature requirement for conveying a homestead was a substantive right, a right that could not be derogated by the application of a civil procedure rule. *See Weber*, 176 Wis. 2d at 1097. The court stated, "In contrast to the descriptive requirements listed in sec. 706.02, the homestead signature requirement must be waived affirmatively by the spouse through the actual signing of the mortgage." *Id.*

¶ 12. In the present case, the Chabrons never signed a document conveying their interest in Stillbrook Hollow. The in-court, oral stipulation that we have construed to be a mortgage was defined in written form by the circuit court, but the McDonalds never sought the Chabrons' signatures upon it to evidence the conveyance. The *Weber* rule is clear. Although the McDonalds do have a valid interest in the property, the stipulation cannot be construed as a "mortgage" for homestead purposes. As *Weber* instructs, when a homestead conveyance does not satisfy the requirements of WIS. STAT. § 706.02, the conveyance is not exempt from the homestead provision of WIS. STAT. § 815.20(1). *See Weber*, 176 Wis. 2d at 1099–1100. Applying the *Weber* rule in the instant case, we determine that the

715

Chabrons should receive the $40,000 homestead exemption from the surplus proceeds after their property was foreclosed and sold. We reverse this component of the circuit court's decision.

¶ 13. In sum, we conclude that under *Klemme*, the parties' stipulation gives the McDonalds a mortgage interest in Stillbrook Hollow. In the context of the homestead statute, however, *Weber* instructs that the requirement that a homestead conveyance bear the conveyors' signatures cannot be abridged. Because the stipulation lacks the Chabrons' signatures, it thus is not considered a mortgage trumping the homestead exemption. We affirm the portion of the court's order concluding that the stipulation was a mortgage, but reverse the portion denying the Chabrons the homestead exemption.

¶ 14. Costs are denied to all parties.

*By the Court.*—Order affirmed in part and reversed in part.